COOPERMAN, APPELLEE AND CROSS-APPELLANT, *v.* UNIVERSITY SURGICAL ASSOCIATES, INC.; CAREY ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as Cooperman *v.* Univ. Surgical Assoc., Inc. (1987), 32 Ohio St. 3d 191.]

192

(No. 86-1757—Decided September 2, 1987.)

*Chester, Hoffman & Willcox, John J. Chester, Charles R. Saxbe* and *Donald C. Brey,* for appellee and cross-appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Gary E. Brown, Vorys, Sater, Seymour & Pease, John C. Elam, Sandra J. Anderson* and *Laura G. Kuykendall,* for appellants and cross-appellees.

STRAUSBAUGH, J. The instant appeal and cross-appeal present numerous and substantial issues for resolution by this court. We will first address the question of whether the court of common pleas had subject-matter jurisdiction to proceed in this case with regard to appellants Carey, Tzagournis and Mekhjian. For the reasons which follow, we hold that neither R.C. Chapter 2743 nor R.C. 9.86 divests the common pleas court of

subject-matter jurisdiction under these facts.

Appellants contend that the courts of common pleas do not have jurisdiction over an action against state officials and employees when the state of Ohio is the real party in interest, citing, *inter alia,* R.C. Chapter 2743. While we acknowledge the general truth of this proposition, *State, ex rel. Williams,* v. *Glander* (1947), 148 Ohio St. 188, 193, 35 O.O. 192, 195, 74 N.E. 2d 82, 85, we reject its application in the instant cause. As such, our analysis must begin with a review of the relevant portions of the amended complaint.

Count One alleges that appellants and the individually named members of the board of trustees and the hospitals board violated Section 1983, Title 42, U.S. Code. This count states that appellants have, "under color of state law, used their authority as officials at The Ohio State University for the purpose of obtaining personal gain to the detriment and deprivation of the economic rights of * * * [appellee]." More specifically, appellee recites that Carey "used his position as Chairman of the Department of Surgery" to force staff surgeons, including appellee, to join Carey's corporation and share private practice income with Carey in exchange for preferments in staff and faculty appointments and surgery assignments; and to, *inter alia,* deprive appellee of earned staff appointments, remove appellee from his position as emergency room attending physician, interfere with appellee's business relationships with surgical residents, and relieve appellee of certain teaching assignments. Appellee alleged that these actions deprived him of property rights, and that Tzagournis and Mekhjian, "despite repeatedly being advised of the problems, * * * under color of state law * * * refused to remedy the problems and * * * directly participated in the efforts taken to impede * * * [appellee's] practice of medicine, to the further detriment and deprivation of the economic rights of * * * [appellee]." Appellee further alleged that the individually named members of the board of trustees and the hospitals board, "despite being advised of the problems * * * have, under color of state law, failed to remedy these problems, to the further detriment and deprivation of the economic rights of * * * [appellee]."

Count Six alleges that Carey made certain slanderous statements about appellee's professional abilities at a "Surgical Morbidity and Mortality Conference." The statements were allegedly made to the medical faculty, students and staff in attendance.

Count Seven states that Carey conspired unlawfully to restrain trade and eliminate competition in the provision of surgery services at the hospital in violation of R.C. Chapter 1331. It further alleges that Tzagournis and Mekhjian "acquiesced in and knowingly permitted" Carey's conduct.

Count Eight also alleges a conspiracy to restrain trade and eliminate competition. The complaint names Carey, Tzagournis, Mekhjian and the individual shareholders of USA as co-conspirators.

Count Ten states that appellants conspired with USA shareholders to interfere with appellee's business relationships with his patients, other doctors, the university and the hospital. The count specifically avers that the conduct was not within the scope of appellants' duties at OSU, and was performed with malice and in bad faith.

Appellants contend that these allegations are insufficient to remove this action from the exclusive jurisdiction of the Court of Claims. The grava-

men of appellee's complaint, appellants argue, is that the Ohio State University, acting through its officials, conducted its business in a manner adverse to appellee's career ambitions. Appellants submit that the entirety of appellee's claims concerns state policy and procedures and that the action is therefore not maintainable in the court of common pleas. We disagree.

R.C. 2743.02 provides in pertinent part:

"(A)(1) The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter * * *."

The jurisdiction of the Court of Claims is exclusive. R.C. 2743.03(A). Any action against the state wherein the state of Ohio has not previously consented to be sued must be brought in the Court of Claims. R.C. 2743.02(A)(1). This requirement extends to actions which are in essence against the state even though the state is not named as a defendant. *Glander, supra,* at 193, 35 O.O. at 195, 74 N.E. 2d at 85. An action against a state officer or employee will be treated as one against the state for purposes of R.C. Chapter 2743 where the state, though not a party to the suit, is the real party against which relief is sought, and where a judgment for the plaintiff, though nominally against the defendant as an individual, could operate to control the action of the state or subject it to liability. *Id.*

Our examination of the instant complaint reveals that the allegations against Carey, Tzagournis and Mekhjian are not in essence directed against the state such that the state is the real party in interest. No state funds are sought to be recovered in this action in the event these appellants are found liable. Moreover, this action does not seek to control state action or to subject the state to liability. See *Scot Lad Foods, Inc.* v. *Secy. of State* (1981), 66 Ohio St. 2d 1, 7-8, 20 O.O. 3d 1, 5, 418 N.E. 2d 1368, 1372-1373. Simply stated, the pertinent allegations in the complaint at bar do not implicate state policy in any way. In this regard, the instant action is completely distinguishable from *Friedman* v. *Johnson* (1985), 18 Ohio St. 3d 85, 18 OBR 122, 480 N.E. 2d 82. The complaint in *Friedman* was specifically held to be one against the state because the conduct at issue concerned the policy of a state agency. *Id.* at 87, 18 OBR at 123, 480 N.E. 2d at 83-84.

Therefore, we conclude that the instant action was properly brought in the court of common pleas. The exclusive jurisdiction of the Court of Claims does not extend to this matter.

Appellants also contend that they are immune from individual liability as a matter of law under R.C. 9.86. The relevant portion of that statute states:

"* * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner. * * *"

The allegations in the instant complaint concern actions by appellants which, if proven to be true, were not performed within the scope of their employment or responsibilities. The complaint charges a course of conduct in which appellants exploited their official authority for strictly personal

gain. Appellee is not simply alleging that appellants, in the proper exercise of the discretionary authority inherent in their positions, operated their respective departments in a manner detrimental to appellee. Appellants would be immune from such an action. *Scot Lad Foods, supra,* at 8, 20 O.O. 3d at 5, 418 N.E. 2d at 1373. Appellee is alleging that although the acts performed by appellants were accomplished through the instrumentality of their official powers, those powers were not, if appellee's allegations are true, utilized to further the business of appellants' employer, the state. The complaint depicts appellants' alleged conduct as designed solely for the improper purpose of advancing appellants' own private, personal interests. If appellee proves these allegations, appellants will not have the benefit of the limited immunity conferred by R.C. 9.86 because the conduct complained of would be "manifestly outside the scope of * * * [appellants'] employment or official responsibilities."

R.C. 9.86 also exempts from immunity any officer or employee who acts "with malicious purpose, in bad faith, or in a wanton or reckless manner." Even if the instant complaint were unsuccessful in alleging that appellants acted manifestly outside the scope of their employment, we are persuaded that the allegations therein, if proven, would divest appellants of their immunity on this second, independent basis. Appellee's complaint alleges that appellants acted in concert to use their positions of authority to intimidate appellee and to punish him for his resistance to their alleged scheme for personal profit. According to appellee's complaint, this punishment consisted of public humiliation, deliberate obstruction of appellee's career advancement, and interference in appellee's business relationships. We are satisfied that these allegations are sufficient to strip appellants of the limited immunity conferred by R.C. 9.86. The facts in the complaint, if proven, would establish that appellants acted with malicious purpose and in bad faith.

We are aware that Count Seven of the complaint differs somewhat in that, as to Tzagournis and Mekhjian, it alleges no affirmative conduct, but only that these appellants "acquiesced in and knowingly permitted" the conduct by Carey alleged in that count. While we question whether mere knowing acquiescence, without more, is sufficient to remove the limited immunity provided by R.C. 9.86, we are mindful of the fact that this count was dismissed pursuant to appellants' motion to dismiss for lack of subject-matter jurisdiction, which basis we have rejected *supra,* and for failure to state a claim upon which relief can be granted. This latter basis is proper only where "it * * * [appears] beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien* v. *Univ. Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus. No such conclusion is justified herein when Count Seven is viewed in its entirety. If appellee were to prove that Tzagournis and Mekhjian, with knowledge of Carey's wrongdoing and with the authority to stop him, deliberately took no action in the hopes of reaping personal profit from such wrongdoing, appellee would be entitled to recovery, as R.C. 9.86 would provide no immunity under these facts. Appellee does allege that Tzagournis and Mekhjian knowingly permitted Carey's alleged misconduct and that they each had "independent stakes and pecuniary interests" in furthering that misconduct. Under these circum-

stances, we are reluctant to deny appellee an opportunity to prove his case.

We also reject appellants' contention that the court of common pleas is without jurisdiction to proceed in an action brought against state officials absent a prior determination by the Court of Claims that the state officials acted manifestly outside the scope of their employment, or acted with malicious purpose, in bad faith, or wantonly or recklessly. In support of this argument, appellants cite the following portion of R.C. 2743.02(A)(1):

"Except in the case of a civil action filed by the state, filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any state officer or employee. The waiver shall be void *if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.*" (Emphasis added.)

Appellants maintain that this section "interacts" with the limited immunity provision of R.C. 9.86 to produce a "single integrated scheme" for the prosecution of civil actions involving the state or state officers. This legislative scheme, appellants contend, contemplates that such actions are presumptively within the exclusive jurisdiction of the Court of Claims and must be prosecuted in that court *unless and until* the Court of Claims makes a determination that the state official or employee acted "manifestly outside the scope of his employment or official responsibility or * * * acted with malicious purpose, in bad faith, or in a wanton or reckless manner" within the meaning of R.C. 9.86. Since no such determination has been made by the Court of Claims herein, appellants argue that the court of common pleas is without authority to proceed.

We find no merit whatsoever in this argument. The portion of R.C. 2743.02(A)(1) upon which appellants rely deals solely with the specific question of waiver, not the general question of jurisdiction. The statute provides that the waiver of any cause of action based on the same act or omission, which normally applies when a plaintiff files a civil action in the Court of Claims, shall be void if that court determines that the act or omission was manifestly outside the scope of employment or committed maliciously, in bad faith, or wantonly or recklessly. No provision in the statute or elsewhere in R.C. Chapter 2743 implies that absent such a determination, a common pleas court is powerless to proceed in a suit against state officials where, as here, no action has been filed in the Court of Claims based on the same conduct.

We hold, therefore, that a court of common pleas does not lack jurisdiction over an action against state officers or employees merely because the Court of Claims has not first determined that the act or omission, which is the subject of the action, was manifestly outside the scope of the officer's or employee's office or employment, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner. This rule does not obtain, however, if the aggrieved party has also filed a concurrent suit in the Court of Claims based upon the same act or omission. As appellee has filed no action in the Court of Claims based upon the acts herein complained of, the waiver provision of R.C. 2743.02(A)(1) does not apply, and the court of common pleas retains its jurisdiction, if such jurisdiction is otherwise proper.

Accordingly, we conclude that the court of common pleas does not lack jurisdiction of the action by virtue of R.C. 9.86 or any provision in R.C. Chapter 2743. We reject appellants' contentions that this action is within the exclusive jurisdiction of the Court of Claims, and that R.C. 9.86 shields appellants from this civil suit. Therefore, the judgment of the court of appeals is affirmed in all respects as to appellant Carey. As to appellants Tzagournis and Mekhjian, the appellate judgment is affirmed as it relates to Counts Six, Eight and Ten, and reversed only as to Count Seven.

We turn now to a consideration of appellee's cross-appeal, which challenges the appellate court's holding that Count One of the complaint failed to state a cause of action under Section 1983, Title 42, U.S. Code. We hold that appellee has failed to sufficiently allege the deprivation of a federal right so as to create a cause of action under Section 1983.

At the outset, it is important to delineate the two procedural issues raised by way of cross-appeal. The first is the holding by the trial court that it lacked subject-matter jurisdiction over the Section 1983 claim. The other is the decision by the court of appeals that appellee failed to state a claim for relief under the federal statute.

We reject for a variety of reasons appellants' arguments that the trial court properly dismissed the Section 1983 claim because appellants were immune from such suits. First, as explained *supra,* the state is not the real party in interest under the facts of this appeal and, as such, R.C. 9.86 affords appellants no immunity in this action. Second, even if this Section 1983 claim

were cognizable in the Court of Claims,[2] to the extent that appellants premise their claim of immunity on R.C. 9.86, that contention is simply mistaken. Immunity, for purposes of a federal claim, is clearly a question of federal law. *Hampton* v. *Chicago* (C.A. 7, 1973), 484 F. 2d 602, 607, certiorari denied (1974), 415 U.S. 917; accord *Martinez* v. *California* (1980), 444 U.S. 277, 283-284, and at fn. 8, rehearing denied (1980), 445 U.S. 920. Finally, as set forth more fully below, appellee has failed to state a cause of action under Section 1983. Hence, the issue of immunity is premature. *Martinez, supra,* at 284 (quoting *Baker* v. *McCollan* [1979], 443 U.S. 137, 140).

We agree with appellants, however, that the court of appeals correctly found that appellee's complaint was insufficient for purposes of a motion to dismiss pursuant to Civ. R. 12(B)(6). That rule states:

"How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * *. *When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court,* the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. * * *" (Emphasis added.)

Here, it is apparent from the face of appellee's complaint that Count One

---

properly before us. Accordingly, we express no opinion on that issue.

alleges only that appellants deprived appellee of economic interests.[3] As such, even construing the allegations most favorably to appellee, there is simply no indication from the face of the complaint that appellee had been deprived of a federal right for purposes of Section 1983.

A complaint alleging Section 1983 as the basis for the action must meet two requirements. First, there must be an allegation that the conduct in question was performed by a person under color of law. Second, the conduct must have deprived appellee of a federal right. *Gomez* v. *Toledo* (1980), 446 U.S. 635.

Unquestionably, the conduct alleged here was performed by persons acting under color of state law. *United States* v. *Classic* (1941), 313 U.S. 299, rehearing denied (1941), 314 U.S. 707; *Screws* v. *United States* (1945), 325 U.S. 91; see, generally, *Monroe* v. *Pape* (1961), 365 U.S. 167, overruled on other grounds in *Monell* v. *Dept. of Social Serv. of New York* (1978), 436 U.S. 658, 663. The requirement of action under color of state law encompasses at least state action. *Lugar* v. *Edmondson Oil Co.* (1982), 457 U.S. 922. It may, however, encompass conduct which is broader than state action. *Id.* at 935, fn. 18. At the heart of this requirement is the notion that individual conduct, to be actionable, must be taken pursuant to powers granted by virtue of state law and possible only because the actor is clothed with the authority of state law. *Classic, supra.*

Here, appellee alleged that appellants were state officers and that they acted under color of state law. Despite the allegations that Carey acted out of self-interest, appellee has sufficiently pleaded facts which, if true, clearly meet the first requirement under Section 1983.

Appellee has not, contrary to his argument on cross-appeal, met the second requirement set forth by *Gomez, supra.* The court of appeals held that appellee failed to sufficiently allege the deprivation of a constitutionally protected right. We believe that decision was correct.

The court in *Gomez* made clear that a Section 1983 plaintiff must allege that "some person has deprived him of a federal right." *Id.* at 640. Where the right asserted is a constitutional right, federal courts have accorded different treatment, under Section 1983, to different rights. Where the right deprived under color of state law is a substantive right—for example, the First Amendment guarantee of free speech or the Fourth Amendment prohibition against unreasonable searches—a Section 1983 suit is always available regardless of supplemental state remedies. *Wolfe-Lillie* v. *Sonquist* (C.A. 7, 1983), 699 F. 2d 864; *Wagner* v. *Higgins* (C.A. 6, 1985), 754 F. 2d 186, 193 (Contie, J., concurring). See, also, *Hudson* v. *Palmer* (1984), 468 U.S. 517, 541, fn. 4 (Stevens J., concurring in part); *Parratt* v. *Taylor* (1981), 451 U.S. 527, 545 (Blackmun, J., concurring), overruled in part on other grounds in *Daniels* v. *Williams* (1986), 474 U.S. ___, 88 L. Ed. 2d 662. See, generally, *Smith* v. *Fontana*

---

[3] Despite appellee's assertions in this appeal that the motivation for appellant Carey's alleged conduct was retaliation for appellee's criticism, thus giving rise to a First Amendment claim, there is *absolutely* no indication on the face of the complaint that such a claim is alleged. This court is not required to interpret the complaint to determine the true nature of appellee's claim. See, *e.g., Macko* v. *Byron* (N.D. Ohio 1983), 576 F. Supp. 875, 881, affirmed (C.A. 6, 1985), 760 F. 2d 95.

(C.A. 9, 1987), 818 F. 2d 1411, 1414-1415. Rotunda, Nowak & Young, 2 Treatise on Constitutional Law: Substance and Procedure (1986) 827, Section 19.39(c). Where, however, the claim asserted rests on the deprivation of a property interest alone, the constitutional right invoked is the *procedural* due process right to notice and hearing. *Hudson, supra,* at 530-537; *Parratt, supra,* at 536-545; *Bd. of Regents* v. *Roth* (1972), 408 U.S. 564. The constitutional infringement under the Fourteenth Amendment is not, as appellee suggests, the deprivation of a property interest *per se,* but is instead the *manner* by which the property is taken. That is, did the owner have an adequate opportunity to be heard " 'at a meaningful time and in a meaningful manner.' " *Parratt, supra,* at 540, quoting *Armstrong* v. *Manzo* (1965), 380 U.S. 545, 552.

While the Supreme Court has never explicitly stated the reasons for a distinction between property interests and "life" or "liberty" interests, the reason is self-evident:

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg* v. *Kelly, supra* [(1970), 397 U.S. 254], had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so." *Roth, supra,* at 577.

Succinctly stated, if the right is not one substantively created by the Constitution, the only constitutional claim available is one premised on the procedural aspects of due process.

Appellee seems to misconstrue the nature of the constitutional right at issue here. While we may agree that appellee has alleged a legitimate entitlement to the benefits of his employment by the state, it does not follow that appellants' conduct, in and of itself, gives rise to a constitutional claim. Rather, as *Roth* makes clear, the constitutional claim arises where the deprivation has occurred without a meaningful opportunity for appellee to be heard. *Id.* at 569-570.

In our view, appellee has failed to allege that he was deprived of his property without an opportunity to be heard. There is no allegation that appellee cannot meaningfully contest appellants' conduct. There is merely the general assertion that appellants violated appellee's rights under the Fifth and Fourteenth Amendments. As such, there is no clear indication on the face of the complaint that appellee's right to procedural due process has been abridged. Accordingly, we hold that a properly stated cause of action under Section 1983, for intentional unauthorized property deprivations, must allege not only a legitimate entitlement to the property but also the deprivation of that property without a meaningful opportunity to be heard.

Even assuming, however, that the complaint sufficiently alleges the taking of appellee's property without a prior opportunity to challenge the deprivation, it nevertheless fails to state a claim for relief under Section 1983. As noted above, when the interest alleged is purely economic, the Constitution requires only that appellee be given an opportunity via state procedures to challenge the taking. *Parratt, supra,* at 543-544. This is true

even where the taking is due to the intentional misconduct of state employees. *Hudson, supra,* at 531-533.

The opportunity to challenge the taking may take the form of either a *pred*eprivation hearing or a *post*deprivation state tort remedy. *Parratt, supra,* at 540-542; *Hudson, supra,* at 531-533; see, also, *Ingraham* v. *Wright* (1977), 430 U.S. 651. The rationale which underlies this reasoning is that where state officials deprive a claimant of property through illegal or unauthorized conduct, but under color of law, there is simply no predeprivation procedure which the state can practicably afford the claimant prior to the taking. *Hudson, supra,* at 533. Accordingly, if the state is able, through adequate postdeprivation state tort remedies, to compensate a claimant for unauthorized intentional property deprivations, the state has provided all the "process" which is due under the Fifth and Fourteenth Amendments for purposes of Section 1983. *Id.*[4]

Here, it is manifest that no constitutional claim is present. Although appellee alleged intentional misconduct, it follows from our holding which sustains appellee's state tort claims that he has a postdeprivation remedy. Since the only interests alleged in Count One are economic, the existence of state court remedies is all the process to which appellee is constitutionally entitled.

Appellee suggests, however, that even if the state provides remedies for his claims, such remedies are nevertheless inadequate. Under the circumstances of this appeal, we are unwilling to find that the remedies provided are inadequate for purposes of Section 1983.

Merely because an award of money damages or relief in mandamus would not fully compensate appellee, because of the intangible character of his property rights, does not necessarily vitiate the adequacy of the remedy provided for purposes of Section 1983. If the loss is nonmeasurable under state tort remedies, the existence of a federal remedy does not make the loss any more measurable. *Hudson, supra,* at 535. Moreover, even though appellee may not recover the full amount of his loss, that fact does not negate the adequacy of state remedy. *Id.* Rather, if the state provides a forum in which appellee can assert his claims, that is an adequate remedy for purposes of Section 1983. *Id.* at 535-536. Any other result, we believe, would seriously undermine the value of this state's remedies. Appellee's contention in this regard, if logically extended, requires a finding that, had the conduct alleged here occurred in the context of a purely private relationship, the injured party would not have an adequate remedy.[5]

Accordingly, we affirm the dismissal of appellee's claim under Section 1983 in all respects. That claim, on its

---

[4] This reasoning does not extend to property expropriations occasioned by established state procedures. *Logan* v. *Zimmerman Brush Co.* (1982), 455 U.S. 422. In that instance, the state is required to afford an adequate predeprivation process. *Id.* Here, appellee has not alleged or argued that the taking is pursuant to an established state procedure.

[5] Clearly, merely because the state provides a procedure which it finds adequate is not dispositive of whether the procedure is *constitutionally* adequate for purposes of due process. *Vitek* v. *Jones* (1980), 445 U.S. 480, 491; *Logan, supra,* at 432; *Cleveland Bd. of Edn.* v. *Loudermill* (1985), 470 U.S. 532, 541. Here, however, the remedy provided is a full evidentiary trial. Whatever else may or may not satisfy the requirements of due process, surely this state's provisions for civil actions are not constitutionally infirm.

face, fails to sufficiently state a constitutional infringement.

Based on the foregoing, the judgment of the court of appeals is reversed in part and affirmed in part as to appellants' appeal, and affirmed as to appellee's cross-appeal.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., LOCHER, HOLMES and WRIGHT, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur in part and dissent in part.

STRAUSBAUGH, J., of the Tenth Appellate District sitting for H. BROWN, J.

DOUGLAS, J., concurring in part and dissenting in part. I concur in paragraphs one and two of the syllabus in this case, and in the analysis and the language underlying them.

I do not concur, however, with paragraphs three and four of the syllabus. I disagree with the majority's conclusion that an adequate state remedy is available to appellee under these facts such that he is precluded from maintaining an action under Section 1983, Title 42, U.S. Code.

To justify today's holding that Count One failed to state a claim upon which relief can be granted under Section 1983, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien* v. *Univ. Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus. I am convinced that the allegations of the complaint at bar, if proved, would entitle appellee to recovery under Section 1983.

I do not accept the majority's posi-

tion that appellee's Section 1983 action cannot be maintained because adequate state remedies are available as a means of redress. In support of its holding, the majority relies on *Parratt* v. *Taylor* (1981), 451 U.S. 527, and *Hudson* v. *Palmer* (1984), 468 U.S. 517. This reliance is misplaced.

*Parratt* involved a Section 1983 action by a prisoner who alleged that prison officials had negligently lost certain mail order materials the prisoner had ordered. The prisoner claimed that he had been deprived of property without due process of law under the Fourteenth Amendment to the United States Constitution. In analyzing the question of whether this claim properly states an action under Section 1983, the court first noted that "* * * in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.* at 535. The court was satisfied that the first element was present, but found that the second element was not. The court reasoned that although the prisoner had clearly been deprived of property, the Fourteenth Amendment protects against only those deprivations which are without due process of law. *Id.* at 537. The deprivation of the prisoner's property was not "without due process of law" since the state provided tort remedies as a means of redress for property losses which satisfy the requirements of procedural due process, in that full compensation would have been provided for the loss suffered. *Id.* at 542-544. Thus, since the property deprivation was not one "without due process of law," the conduct com-

plained of did not deprive the prisoner of a constitutional right, and no Section 1983 action lies.

The majority today holds that the second requirement for a cause of action under Section 1983 is absent here because appellee has not alleged that available state tort remedies are inadequate to compensate him for his loss, citing *Parratt* and *Hudson, supra.* However, both these cases are distinguishable from the instant cause.

The court in *Parratt* emphasized that the nature of the deprivation therein was such that the aggrieved party could have been fully compensated through available state tort remedies. Here, no available procedure can fully compensate appellee for the violation alleged. Unlike *Parratt,* the instant cause involves more than a deprivation of an item of property whose value can be proved for purposes of computing the compensation to which the aggrieved party is entitled. Rather, the case at bar involves a continuing deprivation of non-measurable property rights for which no adequate compensation is otherwise available. An award of money damages would not provide complete relief, in that it would not make appellee whole, nor would it ensure that the alleged violations will cease. Contrary to the implication by the majority, mandamus is not available under these facts, since the alleged injury inflicted on appellee was caused by appellants' exercise of the discretionary authority inherent in their positions. Thus, appellants have no "clear legal duty" to grant appellee the rights and privileges denied him. See *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, 40 O.O. 2d 141, 228 N.E. 2d 631, paragraph nine of the syllabus.

This conclusion, that no adequate state remedy is available to appellee, is unaffected by the United States Supreme Court's subsequent decision in *Hudson, supra,* which extended the holding in *Parratt* to intentional deprivations of property. The *Hudson* court held that "* * * an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment *if a meaningful postdeprivation remedy for the loss is available."* (Emphasis added.) *Id.* at 533. As explained above, the state does not provide an adequate postdeprivation remedy for appellee's loss under these facts, and a Section 1983 action is not precluded.

I am convinced that Count One of appellee's complaint satisfies the two prerequisites for a Section 1983 action as set forth in *Parratt.* The majority acknowledges that the conduct alleged in the complaint was performed by persons acting under color of state law, satisfying the first requirement. The second requirement in *Parratt,* that the conduct complained of must have caused a deprivation of rights, privileges, or immunities secured by the United States Constitution or federal laws, has also been satisfied in this case.

My review of the relevant authorities leads me to conclude that the loss asserted by appellee amounts to a deprivation of a constitutionally protected interest. The landmark United States Supreme Court decisions on the question of whether employment is a protected property interest under the Fourteenth Amendment involve actual termination of the aggrieved party from the position rather than curtailment of associated rights and privileges as in the instant cause. However, the decisions provide valuable guidance on the central issue of whether the employment interests

asserted by appellee in Count One are constitutionally protected.

*Board of Regents* v. *Roth* (1972), 408 U.S. 564, and its companion case, *Perry* v. *Sindermann* (1972), 408 U.S. 593, are particularly instructive. *Roth* involved a teacher at a state university, hired for a fixed term of one academic year, who was informed without explanation that he would not be rehired for the following year. In analyzing whether the renewal of this nontenured state teacher's contract constituted a protected property interest, the court noted at the outset that "* * * [t]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake.* * *" (Emphasis *sic*.) *Roth, supra,* at 570-571. The property interests protected by procedural due process are not limited to tangible items of property. *Id.* at 571-572. But the Fourteenth Amendment safeguards only those interests or benefits already acquired. *Id.* at 576. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. * * *" *Id.* at 577.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. * * *" *Id.*

In holding that the teacher's expectancy of continued employment did not amount to a constitutionally protected property interest, the *Roth* court relied heavily on the fact that the

terms of the teacher's appointment "* * * secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the * * * [teacher] surely had an abstract concern in being rehired, but he did not have a *property* interest" (emphasis *sic*) sufficient to invoke constitutional safeguards. *Id.* at 578.

*Perry, supra,* involved a teacher employed in a state college under a series of one-year written contracts whose contract, without explanation or prior hearing, was not renewed. The college had no tenure system, but the teacher alleged that a binding *de facto* tenure policy was in place upon which he had legitimately relied. In holding that the teacher's expectancy of continued employment was a constitutionally protected property interest under these facts, the *Perry* court noted that the absence of an explicit contractual provision entitling a party to continued employment is not dispositive of the existence of a property interest in reemployment. *Id.* at 601. A contract may be implied from the policies and practices of the institution such that a legitimate claim of entitlement to continued tenure is established. *Id.* at 602. In such a case, the aggrieved party would have more than a mere subjective expectancy which is not protected.

Applying these principles to the instant cause, I would conclude that appellee has alleged an interest in certain benefits of his employment sufficient to rise to the level of a constitutionally protected property interest. The complaint alleges that appellee was deprived of staff and faculty appointments which had been previously promised to

him and which he had earned. These assertions compel the conclusion that appellee's rights, as alleged, amounted to more than purely subjective expectancies or privately cherished hopes. According to the complaint, the employment-related opportunities of which appellee was deprived *had already been earned or acquired.* Thus, appellee has alleged a legitimate entitlement to the benefits described amounting to a constitutionally protected property right.

However, I would reject appellee's argument that the complaint states a cause of action under Section 1983 as against the members of the Ohio State University Board of Trustees and the Ohio State University Hospitals Board. As to these parties, the complaint alleges that individual members, "* * * despite being advised of the problems related to * * * Carey, Tzagournis and Mekhjian, have, under color of state law, failed to remedy these problems, to the further detriment and deprivation of the economic rights of * * * [appellee]." Appellee does not allege any affirmative acts or participation in misconduct. Essentially, the complaint asserts that the members of the two boards were negligent in failing to take action against appellants to protect appellee's rights. In concluding that these allegations are inadequate to state a claim under Section 1983, I rely on recent companion decisions from the United States Supreme Court: *Daniels* v. *Williams* (1986), 474 U.S. ____, 88 L. Ed. 2d 662, and *Davidson* v. *Cannon* (1986), 474 U.S. ____, 88 L. Ed. 2d 677. In these decisions, the court held that mere negligence or a knowing failure to act on the part of state officials or employees is not actionable under Section 1983, Title 42, U.S. Code, as a deprivation of the aggrieved party's right to due process of law under the Fourteenth Amendment to the United States Constitution. Thus, Count One of the instant complaint does not state a cause of action against the members of the Ohio State University Board of Trustees and the Ohio State University Hospitals Board.

Accordingly, I would reverse the court of appeals' holding that no claim for relief was stated in Count One of appellee's complaint, but only as to Carey, Tzagournis and Mekhjian.

SWEENEY, J., concurs in the foregoing opinion.