TINGLEY et al., Appellees,

v.

WILLIAMS COUNTY DEPARTMENT OF HUMAN SERVICES, Appellant.

[Cite as *Tingley v. Williams Cty. Dept. of Human Serv.* (1995), 100 Ohio App.3d 385.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. 94WM000007.

Decided Jan. 20, 1995.

*Jeffrey D. Ginther,* for appellees.

*Martin E. Goff,* for appellant.

Abood, Presiding Judge.

This is an appeal from a judgment of the Williams County Court of Common Pleas which, following a jury verdict, found for appellees in the amount of $1,500 on their claim of negligence and $2,500 on their claim of deprivation of due process pursuant to Section 1983, Title 42, U.S.Code, both of which arose out of the decision of the Williams County Department of Human Services not to place a child with appellees for adoption.

Appellant sets forth the following assignments of error:

"I.   The trial court erred in denying the motion for summary judgment filed by defendant, as there were no genuine issues of material fact on which reasonable minds could differ thereby allowing the granting of summary judgment as a matter of law.

"II.   The trial court erred in denying the motions for directed verdict made by defendant at trial, as there was not sufficient evidence produced by plaintiff[s] to sustain the elements of their respective claims.

"III.   The jury's verdict on plaintiffs' § 1983 action was against the manifest weight of the evidence."

The facts that are relevant to the issues raised on appeal are as follows.   On June 17, 1991, the Williams County Department of Human Services ("appellant") obtained temporary custody of a newborn child ("Brittany"), whom it placed with appellees for foster care.   In December 1991, appellees expressed an interest in adopting Brittany but were told that no decision could be made on an adoptive placement until appellant obtained permanent custody.   On January 16, 1992, appellant received permanent custody of Brittany.   On January 31, 1992, the child was removed from appellees' home and placed for adoption in Wyandot County.

In February 1992, appellees filed the complaint herein in which they alleged that appellant had wrongfully removed Brittany from their home after they had expressed an interest in adopting her.   Appellees sought compensatory damages and an injunction restraining appellant from removing the child.   In April 1992, appellees filed an amended complaint that alleged negligence, intentional infliction of emotional distress and the denial of their constitutional rights to due process pursuant to Section 1983, Title 42, U.S.Code.   In March 1992, the trial court denied appellees' claim for injunctive relief.   In July 1992, appellant filed a motion to dismiss in which it claimed that the court lacked subject matter jurisdiction.   The motion was granted by the trial court in September and in October appellees appealed the ruling to this court.   In July 1993, this court affirmed the trial court's dismissal of appellees' complaint as to the prayer for injunctive relief, but reversed the dismissal of the tort claims and prayer for compensatory relief and remanded the case to the trial court for further proceedings on those claims.   See *Tingley v. Williams Cty. Dept. of Human Serv.* (July 23, 1993), Williams App. No. 92 WM 000021, unreported, 1993 WL 313710.

On December 15, 1993, appellant filed a motion for summary judgment in the trial court.   Appellant argued that its functions are defined as governmental under R.C. 2744.01(C)(2)(m) and, therefore, pursuant to R.C. 2744.02(A)(1), it is immune from liability in this action.   Appellees responded that appellant breached its statutory duty to give them preference in the adoption of Brittany and that,

pursuant to R.C. 2744.03(A)(5) and (6), appellant lost any immunity it might have had because it acted in a "wanton or reckless manner" when it placed Brittany with another family.

On February 17, 1994, a hearing was held on appellant's motion for summary judgment. On February 24, 1994, the trial court denied appellant's motion. The trial court found that, while the actions engaged in by appellant during the course of obtaining permanent custody of the child were governmental in nature, its subsequent actions were proprietary, thereby removing governmental immunity protection. The matter proceeded to jury trial on March 9 and 10, 1994, and the following testimony was heard.

Appellee Betty Tingley testified that appellant placed Brittany in their home in the spring of 1991 when the child was five weeks old. She stated that an attachment was formed between herself and her husband and Brittany, and that she and her husband believed that they would be able to adopt her. Betty stated that when the social worker first brought Brittany to their home, she said that this would probably be an easy permanent custody case because the mother was not likely to show up. Betty stated that no one with the Department of Human Services ever promised them that they would be able to adopt Brittany, but she assumed that it would be all right. In December 1991, Betty wrote a letter to appellant requesting that they be considered as adoptive parents for Brittany. In January 1992, appellees received a letter from appellant which thanked them for their interest and stated that the department would let them know when a final decision was reached.

Betty testified further that on January 14, 1992, they were told that if the department received permanent custody of Brittany the child would be moved to another home for adoption. She testified that she and her husband were upset when they learned of the department's decision, but said that she did not consult a mental health professional or a physician for advice or help in dealing with her feelings. Betty testified as to her understanding, from appellant's written adoption policy that was in effect when Brittany was placed in her home, that foster parents would be given priority, provided that a psychological attachment between the foster parent and child existed and that placement with another family would not be in the child's best interest. Betty stated that when she and her husband initially became foster parents they were told that foster parenting was a temporary situation and that they were aware that when foster children were placed in their home they would eventually return to their birth home or be placed elsewhere in a permanent situation. Betty acknowledged that appellant's adoption policy states that, in order to adopt a nonspecial-needs child such as Brittany, applicants must have verified infertility, and she stated that she was not infertile. She also stated that the policy specified that families with more than

one biological or adopted child would not be considered as candidates for adoption of children aged birth through five years and that at the time Brittany was with them they had both biological and adopted children living in their home.

Appellee Jay Tingley testified as to the attachment he had formed with Brittany and as to his disappointment when he learned that they would not be able to adopt her.

Krista Whitson testified that in December 1991 she was an adoption caseworker for the Williams County Department of Human Services and visited appellees to update their adoption study. She stated that it was then that she learned that they were interested in adopting Brittany.

Deb Willis, a social worker with the Williams County Department of Human Services, testified as to her involvement with Brittany's case. She testified that appellant's stated goal in its case plan for Brittany was reunification with the birth mother.

Appellees rested their case, and appellant moved for a directed verdict, which was denied. Appellant called Marcia Gilmer, Director of the Williams County Department of Human Services, as its first witness. Gilmer testified that foster parents who wish to adopt must meet the same eligibility requirements as other adoptive parents. She stated that because appellees were not infertile they would be precluded from adopting a nonspecial-needs child. Gilmer explained that, under the department's policy, a child could be classified as "special needs" after being in the same foster home for at least twelve months, but said that Brittany had not been with appellees long enough to meet that criterion.

Bethny Foltz, social service supervisor for the Wyandot County Department of Human Services, testified that she had visited Brittany in her adoptive placement and that the child appeared to have bonded with her parents. She stated that she believed that Brittany's placement was in her best interest.

After deliberation, the jury found for appellees on the negligence and violation of due process counts and for appellant on the intentional infliction of emotional distress count. Appellant filed a timely appeal.

We will first consider appellant's third assignment of error, in which the department asserts that the jury's verdict for appellees on the Section 1983 claim was against the manifest weight of the evidence because appellees failed to prove a violation of their due process rights. Appellees respond that their right to due process was violated by appellant's arbitrary and capricious failure to follow its own policy concerning foster parent adoption. Appellees contend that they were entitled to a preference in their efforts to adopt Brittany.

■ As stated by the Ohio Supreme Court in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

■ Upon consideration of all of the evidence that was before the trial court and as summarized above, however, this court cannot find that there was competent, credible evidence presented that appellees' right to due process was violated by appellant's decision to place Brittany in another home for adoption. Accordingly, appellant's third assignment of error is well taken.

■ In its first assignment of error, appellant asserts that the trial court abused its discretion when it denied its motion for summary judgment. Appellant argues that it was undisputed that (1) appellant is a political subdivision, (2) the operation of a county department of human services is a governmental function, and (3) appellees did not allege that appellant had lost its immunity by acting in bad faith or in a wanton or reckless manner. Appellant asserts that, in light of those undisputed facts, the trial court erred by not ruling that sovereign immunity did apply and that it was entitled to judgment as a matter of law. Appellees restate their argument that, pursuant to R.C. 2744.01(G)(1), the function of placing children for adoption is proprietary, not governmental, and that appellant is therefore liable pursuant to R.C. 2744.02(B)(2).

R.C. 2744.02 provides in pertinent part:

"(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in divisions (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

While the exceptions specified in division (B) of R.C. 2744.02 are numerous, we will simply state that the exception allowed by R.C. 2744.02(B)(2) and cited by appellees is inapplicable because it bases liability on actions "with respect to *proprietary* functions of the political subdivisions." (Emphasis added.)

R.C. 2744.01(C)(2) eliminates any question as to whether the functions performed by appellant are governmental or proprietary in nature as follows:

"(2) A 'governmental function' includes, but is not limited to, the following:
" * * *

"(m) *The operation of a human services department* or agency * * *." (Emphasis added.)

After a thorough examination of the record of proceedings in the trial court and the law, this court finds that appellant's actions as a human services department were at all relevant times governmental in nature, thereby providing the department with immunity from liability as a matter of law as to appellees' state tort claims. As to appellees' due process count under federal law, the record indicates that the trial court properly did not consider the issue of immunity as it would apply to that claim. Immunity, for purposes of the federal Section 1983 claim, is a question of federal law. *Cooperman v. Univ. Surgical Assoc., Inc.* (1987) 32 Ohio St.3d 191, 513 N.E.2d 288, citing *Hampton v. Chicago* (C.A.7, 1973), 484 F.2d 602; see, also, *Martinez v. California* (1980), 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481. In light of our finding on appellant's third assignment of error, however, we find that the question of immunity as to the federal claim is rendered moot. Accordingly, appellant's first assignment of error is found well taken.

In its second assignment of error, appellant asserts that the trial court erred in denying its motions for directed verdict. In light of our finding as to appellant's first and third assignments of error, this assignment of error is moot.

On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Williams County Court of Common Pleas is reversed as to counts one and three. Costs of this appeal are assessed to appellees.

*Judgment reversed.*

GLASSER and MELVIN L. RESNICK, JJ., concur.