**BRIDGES et al., Appellants,**

v.

**BUTCH et al., Appellees.**

[Cite as *Bridges v. Butch* (1997), 122 Ohio App.3d 572.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72004.

Decided Sept. 8, 1997.

---

*Roy M. Kaufman*, for appellants.

*Betty D. Montgomery*, Attorney General, and *Timothy J. Mangan*, Assistant Attorney General, for appellees.

---

*Per Curiam.*

This matter comes before this court on the accelerated docket. Therefore, pursuant to App. R. 11.1 and Loc. R. 25, this court may state the reasons for its decision in brief and conclusory form.

Appellants appeal from the trial court's granting of appellees' motion for summary judgment. As our review of the evidence indicates that issues of material fact remain for resolution, this matter is reversed.

On September 30, 1994, appellees Karen Butch, Timothy McGlynn, Dave Hammons, Dave Switzer, Scott Bernard, and Curtis Patrick, all Ohio State Parole Officers ("appellees"), entered the home of appellants Milton Bridges, Sr., and Thelma Bridges ("appellants"), pursuant to arrest warrants issued for appellants' sons, Milton Jr. and Amel Bridges, who had been declared probation violators at large. Neither Milton Jr. nor Amel was in the home, and the officers proceeded to search for contraband.

Milton Jr. had been granted probation on January 14, 1994; Amel had been granted probation on June 14, 1993. Both agreed, as a condition of supervision, to "a search without warrant of my person, my motor vehicle, or my place of residence by a probation/parole officer at any time." They also agreed not to "purchase, possess, own, use, or have under my control, any firearms, deadly weapons, ammunition, or dangerous ordnance," and not to "possess, use, purchase, or have under my control any narcotic drug or other controlled substance."

Thelma Bridges contends that when the parole officers arrived at appellants' residence, she was sitting on her front porch with her four grandchildren. She stated that appellee Butch ordered her, at gunpoint, to go inside and sit on the couch, where she was held for approximately one hour. Thelma also states that

she gave appellees keys to the back apartment and the closet door so they would not break down any doors. She also offered them a key to her husband's locked office. Appellants maintain that appellees broke the lock and door jamb on the office, broke the lock on the closet door, searched every room, including the drawers, and scattered the contents of drawers on the floor.

Appellants further contend that appellees seized from them several weapons, a medicine pouch, a blackjack, a pair of handcuffs, a belt bullet holder, two long dirks (knives), several gun holsters, and approximately $700 in cash. Appellant Milton Bridges, Sr., claimed that the various shotguns and other equipment are used by him for hunting, and are kept in a locked room in the home. Appellants further assert that they were not given any receipts for the items taken.

Following a replevin action in Cleveland Municipal Court, the various guns were returned to appellants. However, appellants claim that the remaining items were never given to the police and, thus, were not returned to appellants. Appellants also allege that appellees damaged their home while conducting the search.

Appellants filed their complaint on July 28, 1995 and an amended complaint on September 4, 1996. Appellants brought this action under Section 1983, Title 42, U.S.Code, alleging that appellees, both individually and as members of the State Adult Parole Authority, in committing these actions, were violating their "right to be free from unlawful search and seizure, false imprisonment [sic] and violating their right to privacy of their home, from destroying their locks and doors from the theft, and placing Plaintiff, Thelma Bridges, and her grandchildren in terror and fear of bodily harm and destruction of her property." Appellees filed a motion for summary judgment on October 15, 1996. The trial court granted appellees' motion on January 22, 1997. Appellants filed a timely notice of appeal of the trial court's order on February 6, 1997.

Appellant states the following as his sole assignment of error:

"The lower court erred in granting defendant's [sic] motion for summary judgment."

When reviewing a motion for summary judgment, the appellate court applies the same standard as that employed by the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Civ.R. 56(C) provides that summary judgment is properly entered when the admissible evidence as enumerated in the rule shows that there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law.

Appellants' complaint apparently contends that their rights were violated pursuant to Section 1983, as they were subjected to an unlawful search and seizure and were deprived of property without due process of law. Appellees

argue that they were entitled to summary judgment, as appellants failed to allege the absence of a postdeprivation remedy and also failed to establish an unlawful search and seizure.[1]

■ Initially, this court notes that the court of common pleas correctly asserted jurisdiction in the action *sub judice*. R.C. 2743.02(F) requires that a plaintiff with a potential claim against the state as the result of the conduct of a state employee first file the action in the Court of Claims to determine whether the employee is entitled to immunity pursuant to R.C. 9.86. However, a plaintiff need not comply with R.C. 2743.02 when bringing a claim under federal law. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292–293, 595 N.E.2d 862, 869–870, see, also, *Shockey v. Fouty* (1995), 106 Ohio App.3d 420, 425, 666 N.E.2d 304, 306–307 (actions against state officials in their individual capacity can proceed in state court without a determination from the court of claims that the employees acted outside the scope of their employment).

In a Section 1983 action, the inquiry is twofold: whether the conduct complained of was committed by a person acting under color of law, and whether this conduct deprived the person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor* (1981), 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, overruled on other grounds, *Daniels v. Williams* (1986), 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662. It is uncontested that appellees acted under color of law. The remaining inquiry, therefore, focuses on whether appellants suffered a deprivation of a right, privilege, or immunity secured by the Constitution or federal law.

The Ohio Supreme Court has stated:

"Property interests are distinguishable from life or liberty interests because property interests are founded on the procedural aspects of due process; they are not substantive rights created by the federal Constitution. *Cooperman* [*v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191] at 200, 513 N.E.2d [288] at 297–298. * * *

"When the interest is purely economic, the Constitution demands only that the challenging party be given a meaningful opportunity to be heard. *Parratt, supra*, [451 U.S.] at 543–544 [101 S.Ct. at 1916–1917, 68 L.Ed.2d at 433–434]. If the state provides adequate postdeprivation state tort remedies for unauthorized intentional property deprivations, the state has provided all the 'process' required under the Fourteenth Amendment." *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 36, 550 N.E.2d 456, 460.

---

1. In their summary judgment motion, appellees also argued that they were entitled to qualified immunity. However, this argument was omitted in their brief on appeal.

Therefore, the court held that in order to assert a claim pursuant to Section 1983 and the Fourteenth Amendment for deprivation of property without due process of a purely economic interest, a plaintiff must allege and prove the inadequacy of state remedies.

In reaching its decision, the Ohio Supreme Court cited the United States Supreme Court's decision in *Parratt.* In *Parratt,* an inmate brought suit under Section 1983 when materials he had ordered through the mail were lost after normal procedures for receipt of mail packages were not followed. The court noted that the fundamental requirement of due process is the opportunity to be heard, which must be granted at a meaningful time and in a meaningful manner. The court determined that the state provided sufficient state law remedies for a person who has suffered a tortious loss due to the negligence of an employee of the state. As the inmate had failed to first use the state law remedies available to him, the court held that the inmate did not sufficiently allege a violation of Section 1983.[2]

The holding in *Parratt* was then extended in *Hudson v. Palmer* (1984), 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393. The court in *Hudson* held that an intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. The court in *Yates v. Jamison* (C.A.4, 1986), 782 F.2d 1182, summarized:

"Thus, *Parratt* and *Palmer* establish the rule that a government official's random and unauthorized act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful postdeprivation remedy. The rationale is that because the wrongful act is not sanctioned by any established procedure, and because state law provides a means for the plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process because the state action is not necessarily complete until the termination of the state's postdeprivation remedy."

■ "Where, however, the claim asserted rests on the deprivation of a property interest alone, the constitutional right invoked is the *procedural* due process right to notice and hearing." (Emphasis *sic.*) *Cooperman v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 200, 513 N.E.2d 288, 297, citing *Hudson v. Palmer* (1984) 468 U.S. 517, 530–537, 104 S.Ct. 3194, 3202–3206, 82 L.Ed.2d 393, 405–410; *Parratt, supra,* 451 U.S. at 536–545, 101 S.Ct. at 1913–

---

2. *Parratt* has been overruled to the extent that it states that the mere lack of due care by a state official may deprive an individual of life, liberty or property under the Fourteenth Amendment. *Daniels v. Williams* (1986), 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662.

1918, 68 L.Ed.2d at 429–435; *Bd. of Regents of State Colleges v. Roth* (1972) 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. The plaintiff therefore must allege and prove the inadequacy of state remedies before asserting a claim pursuant to Section 1983.

However, where the right violated under color of state law is a substantive right, such as the Fourth Amendment's prohibition against unreasonable searches and seizures, "a Section 1983 suit is always available regardless of supplemental state remedies." *Cooperman, supra,* 32 Ohio St.3d at 199, 513 N.E.2d at 297. In the action *sub judice,* appellants also maintain that they were subject to unreasonable search and seizure, thus stating a violation of their Fourth Amendment rights. Therefore, appellants did sufficiently state a claim under Section 1983.

Appellees argue that the search was consented to by both Milton Jr. and Amel as a condition of their probation, and that no seizure occurred, as neither of the appellants was arrested. Appellants do not dispute that appellees had the right to enter their residence and conduct a search.[3] Appellant Thelma, in her affidavit, alleges that appellees ignored her offer of keys and destroyed a door and a closet, that appellees took the guns from the house without leaving any receipts, and, finally, that appellees took cash that was in the home. Appellant Milton stated by way of affidavit that appellees took several gun holsters, knives, a medicine pouch, a belt bullet holder, handcuffs, and cash without issuing a receipt, and that these items were never returned. Finally, appellants submit photographs showing a broken door and a room that appears to have been ransacked.

A seizure of property occurs when " 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal v. Cook Cty., Illinois* (1992), 506 U.S. 56, 61, 113 S.Ct. 538, 543, 121 L.Ed.2d 450, 458, quoting *United States v. Jacobsen* (1984), 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 93–94. The Fourth Amendment protects the right of "the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Thus, the Fourth Amendment protects both property and privacy.

The Fourth Amendment "protects two types of expectations, one involving 'searches', the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs where there is some meaningful interference with an individual's

---

3. As conditions of their parole, both Milton Jr. and Amel had consented in writing to allow a search of their residence at any time. Additionally, appellant Thelma Bridges had acknowledged that Milton Jr. was to be paroled to her residence.

possessory interests in that property." (Footnote omitted.) *Jacobsen, supra,* 466 U.S. at 113, 104 S.Ct. at 1656, 80 L.Ed.2d at 94.

The *Soldal* court further held:

"In our view, the reason why an officer might enter a house or effectuate a seizure is wholly irrelevant to the threshold question whether the [Fourth] Amendment applies. What matters is the intrusion on the people's security from governmental interference. Therefore, the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all." 506 U.S. at 69, 113 S.Ct. at 548, 121 L.Ed.2d at 463–464.

■ Thelma also contends that appellee Butch ordered her and her grandchildren, at gunpoint, to go inside the house from the porch where they had been sitting, and ordered them to stay on the couch for approximately an hour while the search was being conducted. A seizure of a person occurs when there is some application of physical force, however slight, or a show of authority to which the subject yields. *California v. Hodari* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690.

The deposition testimony of appellees Patrick, Switzer, and Bernard fails to corroborate the claims made by appellants.[4] Parole Officer Patrick does not recall any of the officers breaking any locks, nor does he remember seizing property other than firearms. He did not recall seeing a woman and children on the porch. He also testified that one of the rooms upstairs was already a "pigsty" when the officers arrived. He further testified that he would ordinarily issue a receipt when confiscating weapons, as long as there was no breach of security.

Parole Officer Switzer testified that he did not have the authority to seize anything that was not contraband. He also did not remember seeing anyone on the porch when they arrived. Further, he did not recall anyone breaking a door lock, and he recalls removing only weapons, although he admitted that no receipt was issued for the weapons that were seized.[5]

Parole Officer Bernard also believed that only weapons were removed from the home, although he remembered seeing handcuffs. He did not remember that keys were given to any of the officers. Bernard also acknowledged that they did not issue a receipt. He believed that it was the duty of the Cleveland Police

---

4. Interestingly, the affidavit submitted by Parole Officer Butch does not contest any of the facts as asserted by appellants.

5. Parole Officer Switzer, therefore, admits that the officers failed to comply with R.C. 2933.41, which requires an inventory of property that is taken pursuant to a search.

Department to issue receipts because once property is removed from the home, it becomes the property of the Cleveland Police Department. Bernard also did not remember seeing a woman and children on the front porch when they arrived.

On a motion for summary judgment, it is neither the duty of this court nor of the trial court to weigh the evidence or determine the credibility of witnesses. The evidence submitted by both appellants and appellees indicates the existence of issues of material facts. If appellees did seize property that was not contraband, did not issue a receipt, failed to turn over the property to the Cleveland Police Department, and destroyed doors and locks in appellants' home as alleged, there was an interference with appellants' possessory interest in their property that would constitute a seizure. If Thelma and her grandchildren were ordered inside the house and forced to remain seated, at gunpoint, a seizure of Thelma's person may have occurred. The resolution of the issues of fact will determine whether appellants suffered a seizure of either person or property, and whether the seizure, if it occurred, was unreasonable.

Appellants have submitted sufficient evidence to indicate that when construing the evidence most strongly in favor of the nonmovant as required by Civ.R. 56(C), issues of fact remain to be determined regarding appellants' allegations that they were subject to an unreasonable search and seizure. Summary judgment was improperly granted in the trial court.

*Judgment reversed*
*and cause remanded.*

JAMES D. SWEENEY, C.J., DYKE and ROCCO, JJ., concur.