OHIO ACADEMY OF NURSING HOMES, INC., APPELLANT, v.
BARRY, DIRECTOR, ET AL., APPELLEES.

[Cite as Ohio Academy of Nursing Homes, Inc. *v.* Barry (1990),
56 Ohio St. 3d 120.]

(No. 89-1429—Submitted September 26, 1990—Decided December 26, 1990.)

" * * *

122

*Geoffrey E. Webster; Tataru, Wallace & Warner* and *Terry Tataru,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Diane Weaver* and *Alan Schwepe; Clarence D. Rogers, Jr.; Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.,* Kenneth F. Seminatore, *Anthony J. Garofoli* and *Kathryn T. Joseph,* for appellees.

*Benesch, Friedlander, Coplan & Aronoff, N. Victor Goodman, Harry M. Brown, James F. DeLeone, John J.*

*Duffey* and *Mark D. Tucker,* urging reversal for *amici curiae,* Assn. of Ohio Philanthropic Homes and Housing for the Aging and Ohio Health Care Assn.

*Bricker & Eckler* and *James J. Hughes, Jr.,* urging reversal for *amicus curiae,* Ohio Hospital Assn.

HOLMES, J. The central issue before this court is whether the Academy may assert a private cause of action under Section 1983 for alleged violations of the Boren Amendment. Also before the court is the propriety of the trial court's decision to enter summary judgment in favor of the appellees. For the reasons which follow, we find that the Academy may bring this action, and that the trial court erred in granting summary judgment for the appellees.

## I

Medicaid Providers' Cause of Action Under Sections 1983 and 1396a(a)(13)(A), Title 42, U.S. Code

In propositions of law one, two and six advanced by the Academy, the issue centers on whether a Medicaid provider has a cause of action under Sections 1983 and 1396a(a)(13)(A), Title 42, U.S. Code. The very recent United States Supreme Court decision of *Wilder* v. *Virginia Hosp. Assn.* (1990), 496 U.S. ____, 110 L. Ed. 2d 455, 110 S. Ct. 2510, rendered subsequent to the court of appeals' decision herein, is determinative of this issue.

In *Wilder,* the respondent, a nonprofit corporation composed of public and private hospitals operating in Virginia, filed suit against state officials for declaratory and injunctive relief under Section 1983, alleging, *inter alia,* the "state plan" violated the Boren Amendment because its reimbursement rates were not "reasonable

and adequate." The Supreme Court opinion noted:

"* * * The primary objective of the [Boren] Amendment was to free States from reimbursement according to Medicare 'reasonable cost' principles as had been required by prior regulation. The Amendment 'delete[d] the * * * provision requiring States to reimburse hospitals on a reasonable cost basis. It substitute[d] a provision *requiring States to reimburse hospitals at rates * * * that are reasonable and adequate* to meet the cost which must be incurred by efficiently and economically operated facilities in order to meet applicable laws and quality and safety standards.' * * * In passing the Boren Amendment, Congress sought to decentralize the method for determining rates, but not to eliminate a State's fundamental obligation to pay reasonable rates. See S. Rep. No. 96-471, *supra,* at 29 (flexibility given to States 'not intended to encourage arbitrary reductions in payment that would adversely affect the quality of care'). * * *" *Id.* at ____, 110 L. Ed. 2d at 471-472, 110 S. Ct. at 2520.

In *Wilder,* the Supreme Court concluded that the Boren Amendment's background and legislative history demonstrated that it was passed to free states from restrictive reimbursement requirements previously imposed by the Secretary and not to relieve them from their fundamental obligation to pay reasonable rates, and that Congress intended to retain providers' pre-existing right to challenge rates as unreasonable in injunctive suits or declaratory judgment actions pursuant to Section 1983. Therefore, the Boren Amendment "creates a right, enforceable in a private cause of action pursuant to § 1983, to have the State adopt rates that it finds are reasonable and adequate rates to meet the costs of an efficient and economical health care

provider. * * *" *Id.* at ____, 110 L. Ed. 2d at 476, 110 S. Ct. at 2525.

Accordingly, we hold that a Medicaid provider may bring an injunction or a declaratory judgment action pursuant to Section 1983, Title 42, U.S. Code, in order to seek enforcement of its rights under Section 1396a(a)(13)(A), Title 42, U.S. Code.[3]

## II
## Propriety of a Mandamus Action Under Section 1396a(a)(13)(A)

In the Academy's third proposition of law the issue presented is whether a mandamus action may be brought pursuant to Section 1396a(a)(13)(A) and R.C. 5111.02, 5111.21 and 5111.24. The elements needed in order to maintain a mandamus action are:

" '* * * [T]he court must find that relator has a clear legal right to the relief prayed for, that respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law. * * *'

"In addition, this court has held that in order for a relator to receive money due him by a state official, the amount recoverable must be established with certainty. * * *'" (Citations omitted.) *State, ex rel. Montrie Nursing Home, Inc.,* v. *Aggrey* (1980), 63 Ohio St. 2d 121, 126, 17 O.O. 3d 74, 77, 407 N.E. 2d 485, 488; see, also, *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, 15 O.O. 3d 3, 399 N.E. 2d 66, paragraph one of the syllabus.

The court of appeals determined, in part, that the Academy had failed to satisfy the necessary elements to commence a mandamus action. Specifically, the appellate court held that "[e]ven if the present reimbursement rate violates federal law, * * * [Academy] cannot establish with certainty an entitlement to a specific sum of money because the applicable federal law does not require a particular rate of reimbursement. * * *"

In addressing the propriety of a mandamus action in this case we need not determine whether the amount recoverable can be established with certainty. Instead, in reviewing the *Wilder* decision, we note that actions under Sections 1983 and 1396a(a)(13)(A) may be maintained in declaratory judgment or injunction suits; therefore, "a plain and adequate remedy at law" is available to the disappointed relator. Cf. *State, ex rel. Fenske, v. McGovern* (1984), 11 Ohio St. 3d 129, 11 OBR 426, 464 N.E. 2d 525, paragraphs one and two of the syllabus. Consequently, a mandamus action would not be available to parties challenging the reimbursement procedures pursuant to Section 1396a(a)(13)(A).

## III
## Constitutional Claims

In the Academy's fourth proposi-

---

[3] The trial court held that an administrative remedy was available to the Academy, via R.C. Chapter 119, and that therefore the Academy was foreclosed from the present action. However, as the *Wilder* court held:

"* * * The availability of state administrative procedures ordinarily does not foreclose resort to § 1983. See *Patsy* v. *Board of Regents of Florida* [1982], 457 U.S. 496, 516 * * *. Most States, including Virginia, do not allow health care providers to challenge the overall method by which rates are determined. * * * Such limited state administrative procedures cannot be considered a 'comprehensive' scheme that manifests a congressional intent to foreclose reliance on § 1983. Thus, we conclude that Congress did not foreclose a private judicial remedy under 1983." (Citations omitted.) *Id.* at ____, 110 L. Ed. 2d at 476, 110 S. Ct. at 2524-2525.

tion of law it contends that its complaint sufficiently alleged that appellees violated its due process rights under the state and federal Constitutions. Specifically, the Academy maintained in its amended complaint that the appellees failed to consult with the Medical Care Advisory Committee in the form and manner required by federal law. See Section 1396a(a)(4), Title 42, U.S. Code, and Section 431.12, Title 42, C.F.R. Moreover, the Academy claimed that appellees did not publish a public notice in the form and manner required by federal law. Section 447.205, Title 42, C.F.R. In addition to its procedural due process claim, the Academy also claimed its substantive due process rights were violated in that the Ohio Adm. Code rule amendment and the acts taken to implement the amendment were in violation of federal and state statutes. Essentially, the Academy contends that its complaint alleged the rule amendment was arbitrary and discriminatory without a reasonable relation to a legislative purpose. The court of appeals, as well as the trial court, summarily disposed of these issues by holding that the Academy did nothing more than generally assert that its due process rights were violated.

In *Cooperman* v. *University Surgical Assoc., Inc.* (1987), 32 Ohio St. 3d 191, 513 N.E. 2d 288, paragraph three of the syllabus, this court stated: "To state a cause of action, under Section 1983, Title 42, U.S. Code, for unauthorized intentional property deprivations, a claimant must allege not only that he is legitimately entitled to the property, but also that he was deprived of the property without a meaningful opportunity to be heard." In *Cooperman,* this court was asked to determine whether there had been sufficient allegations of deprivation of a constitutionally protected right. This court in *Cooperman* held that one does not automatically state a Section 1983 claim by merely asserting deprivation of a federal constitutional right. Rather, an aggrieved party alleging unconstitutional deprivation of a property interest must assert that he or she is entitled to the property, and that the deprivation of the property was without a meaningful opportunity to be heard. *Id.* at 199-200, 513 N.E. 2d at 297.

The appellees cite *Koerpel* v. *Heckler* (C.A.10, 1986), 797 F. 2d 858, 863-864, and *Oberlander* v. *Perales* (C.A.2, 1984), 740 F. 2d 116, 120, for the proposition that providers of health care services have no property interest in reimbursement, but merely an expectation of an entitlement. In *Oberlander,* the United States Court of Appeals, Second Circuit, was confronted with the issue of whether a nursing home which was affected by a change in reimbursement rates, allegedly without receiving proper notice or an opportunity to be heard, was deprived of due process. The *Oberlander* court held:

"* * * To prevail upon such a claim, * * * [the nursing home] must establish, *inter alia,* the existence of a valid property interest. Such interests are created, not by the Constitution, but by an independent source such as state law. *Board of Regents of State Colleges* v. *Roth* [1972], 408 U.S. 564, 577 * * *. Because Medicaid providers clearly have no property interest in future reimbursements under New York law, * * * [the nursing home's] claim based upon the recalculation of a rate for future services must be dismissed." *Id.* at 120; see, also, *Cervoni* v. *Secretary of Health, Edn. & Welfare* (C.A.1, 1978), 581 F. 2d 1010.

Other federal courts, however, have found a property interest in such claims for reimbursement. In *Wayside*

*Farms, Inc.* v. *United States Dept. of Health & Human Services* (N.D. Ohio 1987), 663 F. Supp. 945, 950, the court indicated that: "* * * The extent of due process rights enjoyed by a provider in relation to a decision to terminate its certification involves a balancing of its interests in continued certification with the interests of the Medicaid recipients, the true beneficiaries. It is generally agreed, however, that a provider does have some *property interest* in the expectation of continued participation in the Medicaid program pursuant to statute which is subject to due process protection. * * *" (Emphasis added.) Further, in *Patchogue Nursing Ctr.* v. *Bowen* (C.A.2, 1986), 797 F. 2d 1137, 1144-1145, certiorari denied (1987), 479 U.S. 1030, the United States Court of Appeals, Second Circuit, recognized that "[h]ealth care providers have a constitutionally protected property interest in continued participation in the Medicare and Medicaid programs, * * * and thus are entitled to some form of hearing before being finally deprived of that interest. * * *" (Citations omitted.) But, see, *Plaza Health Laboratories, Inc.* v. *Perales* (C.A.2, 1989), 878 F. 2d 577.

As noted in *Oberlander* v. *Perales* (May 17, 1983), S.D.N.Y. No. 83 Civ. 2665, "A finding of a protected property interest, however, does not automatically mean that an invasion of that interest is a constitutional violation, because the Fourteenth Amendment protects only against deprivations without due process of law. *Baker* v. *McCollum* [1979], 443 U.S. 137, 145 * * *."

The *Patchogue Nursing* court quoted *Mathews* v. *Eldridge* (1976), 424 U.S. 319, for the criteria by which to evaluate whether the administrative procedures provided are constitutionally sufficient:

"* * * First, [the court must consider] the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.* * *" *Id.* at 335.

In reviewing the case *sub judice,* we find that the amended complaint alleges that the Academy's Medicaid long-term providers had contracts in effect with appellee prior to and subsequent to the adjustment to the A & G rate from $12.55 per day to $10.80 per day. The complaint further asserts that after the contracts were entered into or after the initial rate-setting process had begun, ODHS set the A & G rate at $12.55 per day, representing that the rate was in conformity with federal and state law governing Medicaid reimbursements. At this point the Academy had a legitimate property interest in the reimbursement rate, pursuant to R.C. 5111.21 and 5111.22[4] and Section 1396a(a)(13)(A), which

---

[4] At the time in question, R.C. 5111.21 provided in pertinent part:

"(A) Subject to section 5111.02 of the Revised Code, the department of human services shall pay, as provided in sections 5111.20 to 5111.32 of the Revised Code, the reasonable costs of services provided to an eligible medicaid recipient by an eligible home." 141 Ohio Laws, Part I, 4102.

R.C. 5111.22 provides in pertinent part:

"A provider agreement between a home and the department of human services shall contain the following provisions:

"(A) The department agrees to:

"(1) Make payments to the home for patients eligible for services under the medical assistance program as provided in

could not be diminished absent due process of law under Section 16, Article I of the Ohio Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution. We believe this conclusion is supported by the United States Supreme Court decision in *Wilder* v. *Virginia Hosp. Assn., supra,* in that the *Wilder* court found that Medicaid providers have a private cause of action, via Section 1983, against states which have allegedly failed to adjust reimbursement rates according to federal and state law. See discussion in Part I, *supra.* Although the *Wilder* court did not directly address the procedural due process rights of health care providers under Section 1396a(a)(13)(A), it implied that they must be accorded a hearing which comports with due process.

In addressing Academy's substantive due process argument we observe that rules promulgated by an administrative agency have the force and effect of law unless they are unreasonable or are in conflict with related statutes enacted by the General Assembly. *Parfitt* v. *Columbus Correctional Facility* (1980), 62 Ohio St. 2d 434, 436, 16 O.O. 3d 455, 456, 406 N.E. 2d 528, 530, certiorari denied (1980), 449 U.S. 1061; *Kroger Grocery & Baking Co.* v. *Glander* (1948), 149 Ohio St. 120, 125, 36 O.O. 471, 474, 77 N.E. 2d 921, 924; *State, ex rel. Kildow,* v. *Indus. Comm.* (1934), 128 Ohio St. 573, 580, 1 O.O. 235, 238, 192 N.E. 873, 876. Therefore, it is axiomatic that administrative agency rules, just as

statutes, must have a reasonable relation to a proper legislative purpose and be neither arbitrary nor discriminatory in their effect. See, generally, *State, ex rel. Allstate Ins. Co.,* v. *Bowen* (1936), 130 Ohio St. 347, 4 O.O. 427, 199 N.E. 355, paragraph four of the syllabus; *In re Groban* (1957), 352 U.S. 330; *Nebbia* v. *New York* (1934), 291 U.S. 502, 525.

In discussing the rights created to benefit health care providers and the standards by which to evaluate state reimbursement under the Boren Amendment, the *Wilder* court stated:

"We must * * * determine whether the Boren Amendment creates a 'federal right' that is enforceable under § 1983. * * * [W]e conclude that the Medicaid Act creates a right enforceable by health care providers under § 1983 to the adoption of reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically operated facility that provides care to Medicaid patients. *The right is not merely a procedural one* that rates be accompanied by findings and assurances (however perfunctory) of reasonableness and adequacy; rather the Act provides a substantive right to reasonable and adequate rates as well.

"There can be little doubt that health care providers are the intended beneficiaries of the Boren Amendment. * * *" (Emphasis added.) *Id.* at ____, 110 L. Ed. 2d at 464, 110 S. Ct. at 2517.

The *Wilder* court emphasized that the Boren Amendment should not be

---

sections 5111.20 to 5111.32 of the Revised Code. * * *
"* * *
"A provider agreement shall be effective for no longer than twelve months and may be renewed only if the home is in compliance with federal and state laws and rules for participation in the medicaid program.

"The department, in accordance with rules adopted pursuant to Chapter 119. of the Revised Code, may elect not to enter into, not to renew, or to terminate a provider agreement when the department determines that such an agreement would not be in the best interests of the recipients or of the state."

interpreted so as to render it a "dead letter." *Id.* at ___, 110 L. Ed. 2d at 470, 110 S. Ct. at 2520. The lower courts should be guided by the *Wilder* court's commentary which suggested:

"* * * Any argument that the requirements of findings and assurances are procedural requirements only and do not require the State to adopt rates that are actually reasonable and adequate is nothing more than an argument that the State's findings and assurances need not be correct.

"We reject that argument because it would render the statutory requirements of findings and assurances, and thus the entire reimbursement provision, essentially meaningless. It would make little sense for Congress to require a State to make findings without requiring those findings to be correct. * * *" *Id.* at ___, 110 L. Ed. 2d at 470, 110 S. Ct. at 2519-2520.[5]

Accordingly, the Academy has satisfied the first prong of *Cooperman, supra, i.e.,* it has a legitimate property interest in receiving reimbursements from the state pursuant to R.C. 5111.21, 5111.22 and Section 1396a(a)(13)(A). However, in order to claim a deprivation of its property interest the Academy must still show that it was not afforded a "meaningful opportunity to be heard," the second prong set forth in *Cooperman.* Further, with respect to the Academy's substantive due process claim, the trial court on remand should review the adjustment to the rate reimbursement in light of the United States Supreme Court's mandate for a meaningful review.[6]

Therefore, for the reasons discussed above, the Academy's fourth proposition of law is sustained.

In its fifth proposition of law, the Academy claims that its complaint stated a cause of action for appellees' alleged violation of the Academy's equal protection rights under the Ohio and United States Constitutions. Specifically, in paragraph twenty of the amended complaint, the Academy

---

[5] The *Wilder* court pointed out that "the Amendment gives the States substantial discretion in choosing among reasonable methods of calculating rates [which] may affect the standard under which a court reviews whether the rates comply with the Amendment, but it does not render the Amendment unenforceable by a court. While there may be a range of reasonable rates, there certainly are *some* rates outside that range that no State could ever find to be reasonable and adequate under the Act. * * *" (Emphasis *sic.*) *Id.* at ___, 110 L. Ed. 2d at 473, 110 S. Ct. at 2523; see, *e.g., AMISUB (PSL), Inc.* v. *Colorado Dept. of Social Services* (C.A.10, 1989), 879 F. 2d 789, 796 (the court invalidated the Colorado plan because the state had not made any findings that its rates were "reasonable and adequate" and because the state conceded that the adoption of its "budget adjustment factor," which reduced reimbursement by forty-six percent and which was based on sums previously appropriated for reimbursement, had absolutely no relevance to the actual costs of an efficient hospital); *West Virginia Univ. Hospitals, Inc.* v. *Casey* (C.A.3, 1989), 885 F. 2d 11, 22-24, certiorari granted (1990), 494 U.S. ___, 108 L. Ed. 2d 472, 110 S. Ct. 1294 (invalidating a Pennsylvania plan because it provided no justification for treating out-of-state hospitals differently from in-state hospitals).

[6] Although we have found that the adjustment to the reimbursement rate is not violative of the Equal Protection Clauses of the Ohio and United States Constitutions (see Part III), the trial court on remand must review the complete record in order to determine whether the adjustment has a reasonable relation to a proper legislative purpose as set forth in *Wilder, supra.*

1

asserted that the appellees arrived at an "arbitrary and irrational classification of, on one hand, long-term care providers whose rates are being reduced * * * and, on the other, all other Medicaid providers."

In reviewing the federal equal protection claims, this court acknowledges that "a Medicaid reimbursement plan results from legislative and policy decisions made at both the Federal and State levels and that judicial review is both limited and 'highly deferential,' presuming agency action to be valid, and refraining from substituting the Court's own judgment for that of the agencies. * * *" *Pinnacle Nursing Home* v. *Axelrod* (W.D.N.Y. 1989), 719 F. Supp. 1173, 1181; *Colorado Health Care Assn.* v. *Colorado Dept. of Social Services* (C.A.10, 1988), 842 F. 2d 1158, 1164; *California Hosp. Assn.* v. *Schweiker* (C.D. Cal. 1982), 559 F. Supp. 110, 116, affirmed (C.A.9, 1983), 705 F. 2d 466. Moreover, as noted by the court in *Pinnacle Nursing Home, supra,* at 1181, "[i]n reviewing nonadjudicatory Federal agency action, the Court is limited to deciding whether the action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law.' *Citizens to Preserve Overton Park, Inc.* v. *Volpe* [1971], 401 U.S. 402 * * *. In addition, since Federal law gives each state great latitude in dispensing its available funds, the same standard of review afforded the action of a Federal agency applies as well to actions of a state agency in administering a Medicaid plan. *Friedman* v. *Perales* [S.D.N.Y. 1987], 668 F. Supp. 216, 221 * * *, affirmed [C.A.2, 1988], 841 F. 2d 47 * * *." Similarly, under the Ohio Constitution different classifications are permissible if they bear a reasonable relationship to the objectives sought to be accomplished. *Wargetz* v. *Villa Sancta Anna Home for the Aged* (1984), 11 Ohio St. 3d 15, 11 OBR 49,

462 N.E. 2d 1215. Once the lawmaking body has set forth a particular classification, the law will not be invalidated unless it is found to be clearly arbitrary, unjust, capricious, or unreasonable.

In this case, because the appellees' different treatment of nursing home providers affects no fundamental right or suspect class, we shall apply a "rational basis" scrutiny in determining whether Ohio Adm. Code 5101:3-3-21 is valid under the Equal Protection Clauses of the Fourteenth Amendment and the Ohio Constitution. Given the wide latitude granted by the Boren Amendment, we conclude that the regulation or classification herein is not unreasonable. See *Mississippi Hosp. Assn., Inc.* v. *Heckler* (C.A.5, 1983), 701 F. 2d 511, 519 ("* * * [T]he legislative history of the Medicaid statutes clearly indicates that Congress intended states to be free to establish rates on a geographic or class basis, as well as a facility-by-facility basis"); *Alabama Nursing Home Assn.* v. *Harris* (C.A.5, 1980), 617 F. 2d 388, 392, citing S. Rep. No. 1230, 92d Cong., 2d Sess. 287-288 (1972); *Colorado Health Care Assn.* v. *Colorado Dept. of Social Services* (D. Colo. 1984), 598 F. Supp. 1400, at 1407, affirmed (C.A. 10, 1988), 842 F. 2d 1158 ("* * * [B]udgetary considerations can enter into a state's evaluation and development of a funding plan. * * * States are afforded wide latitude in formulating specific medicaid plans."). Accordingly, in reviewing the factual record before us, including statements made by a deputy Director of ODHS, explaining why the different classification was statistically justified, we hold that former Ohio Adm. Code 5101:3-3-21 is not violative of the equal protection rights contained in either the Ohio or the United States Constitution. Therefore, Academy's fifth proposition of law is overruled.

## IV
### Procedural Claims

In propositions of law seven and eight, the Academy asserts that summary judgment was improper since there were genuine issues of fact still in controversy. Since we are remanding this case for consideration of Academy's due process claims, we need not address these propositions of law.

## V
### Conclusion

In summary, we have found that Medicaid providers, such as the Academy, have a cause of action to challenge reimbursement rates established pursuant to Section 1396a(a)(13)(A) in an injunction or declaratory judgment action under Section 1983. Further, we hold that the Academy in this case has a legitimate property interest in receiving funds pursuant to Section 1396a(a)(13)(A). Therefore, the Academy is entitled to a hearing comporting with its due process rights.

Moreover, the Academy may attempt to establish that appellees failed to promulgate a "reasonable and adequate" reimbursement rate for nursing home Medicaid providers. Finally, Academy has failed to establish any equal protection violations under the Ohio or United States Constitutions.

Accordingly, for the foregoing reasons, the judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the trial court for proceedings not inconsistent with this opinion.

*Judgment affirmed in part,
reversed in part, and
cause remanded.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

H. BROWN, J., concurs in judgment only.