OPINION
This case is another in a series involving the Ohio Adult Parole Authority's (APA's) use of parole eligibility classifications. On May 4, 2000, inmate, Howard Lee, filed a declaratory judgment action against the APA and the Montgomery County Prosecutor. In the complaint, Lee alleged that the APA had improperly breached a plea agreement by classifying his parole eligibility based on his offense of indictment rather than the offense of conviction. Specifically, Lee's parole eligibility was based on aggravated murder, even though he pled guilty only to involuntary manslaughter. Lee's complaint was a direct response to our prior decision in Lee v. Ohio Adult Authority (Apr. 7, 2000), Montgomery App. No. 17976, unreported. In that case, we were forced to dismiss Lee's complaint for declaratory judgment because Lee failed to comply with all the requirements for waiver of filing fees in actions against a government entity. However, in the opinion, we commented that:
 [w]hile we cannot afford Lee his relief on this appeal, we would think that the Authority would bow to the inevitable and correct Lee's offense category to the one the State has agreed to, that is, "involuntary manslaughter," rather than requiring Lee to go around the track another time.
2000 WL 353159, at p. 2.
Apparently, the APA disagreed with our suggestion, because the offense category was not corrected. As a result, Lee filed the present action, asking that the APA be required to change his offense category from Category 13 to Category 8. After considering cross motions for summary judgment, the trial court granted summary judgment to Lee, and this appeal then followed. The APA contends the trial court decision was incorrect, for the following reasons:
 I. The trial court erred in ordering the APA to place Appellee in Category 8 instead of Category 13 because that order violates the constitutional separation of powers doctrine.
 II. The trial court erred in finding that the Montgomery County Prosecutor's Office, in negotiating Appellee's plea agreement, represented the APA regarding parole matters pursuant to Chapters 2967 and 5149 of the Ohio Revised Code.
 III. The trial court erred in finding that parole considerations of Appellee, such as placement in a particular category of the APA's Guidelines, were part of Appellee's plea agreement.
 IV. The trial court erred in ordering the Ohio APA to place inmate Lee in Category 8 instead of Category 13 because a construction of Lee's plea agreement as requiring placement in Category 8 violates public policy and the Ohio Administrative Code.
 V. The trial court erred in finding that the action of the Ohio APA in placing Lee in Category 13 instead of Category 8 violates separation of powers and substantive due process because Lee has not been held past his maximum sentence, remains eligible for parole, and will be considered for parole again in 2008.
 VI. The trial court erred in finding that Appellee will serve more time than what was imposed by the sentencing court if he remains in Category 13 of the Parole Guidelines because Appellee has already become eligible for parole and will be considered for release prior to serving 360 months.
The trial court also granted summary judgment to the Montgomery County Prosecutor, but that decision was not appealed. Accordingly, the only issue before us is the propriety of the summary judgment granted to Lee on his claims against the APA. Because all six assignments of error are intertwined, they will be considered together.
The magistrate who considered the motions for summary judgment wrote a quite lengthy analysis of the legal and factual circumstances surrounding Lee's case. Essentially, what happened was that Lee was indicted in 1989 for aggravated murder with a firearm specification. Ultimately, after plea negotiations, Lee pled guilty to involuntary manslaughter with a firearm specification. He was then sentenced in January, 1990, to nine to twenty-five years for the manslaughter conviction, plus an additional consecutive term of three years for the firearm. Thus, Lee's potential sentence would have been from twelve to twenty-eight years.
However, in March, 1998, the APA adopted new guidelines (a grid system) for classifying offenders. Under this system, inmates are given a "Criminal History/Risk Score" which lets the APA evaluate the inmate's past and present behavior. Additionally, offenses are ranked from one to thirteen, with one being the least serious and thirteen the most serious. To decide the proper offense category, the APA examines the underlying behavior, and determines by a preponderance of the evidence what the behavior would be under the Ohio criminal code. The potential parole eligibility date is then calculated based on where the offense category and risk score intersect.
Lee's first parole hearing occurred, on October 21, 1998. According to Lee, he was told at the hearing that he had been originally indicted for aggravated murder and would be required to serve the time in prison for that offense. Lee was then placed in a category for aggravated murder (13), rather than the category for involuntary manslaughter (8). The effect was that Lee's parole eligibility was thirty years (360 months) to life, as opposed to the nine to eleven years for the intersection of his conviction and risk score. Lee's next parole hearing was then set ten years out, for October 2008.
After considering the above facts, the magistrate found that Lee was entitled to summary judgment. The magistrate first held that the State, through the APA, had breached Lee's plea agreement. Second, the magistrate concluded that the APA's actions violated substantive due process and offended "traditional concepts of fairness and justice." In this regard, the magistrate focused on the difference in proof between indictments and convictions. Then the magistrate observed that:
 By use of this system, the state is getting a result indirectly that it could not get directly. Use of the Authority's theory is very dangerous. It virtually eliminates the constitutional safeguards that are designed to protect the liberty of the accused. The state is treating the person as being convicted of what the state alleged without having to prove it beyond a reasonable doubt at trial. In this case, the Plaintiff's actual conviction of involuntary manslaughter is ignored. It is as if that never happened.
Based on the above analysis, the magistrate ordered the APA to correct Lee's offense category and place him in category 8. After the APA filed objections, the trial court adopted the magistrate's decision.
Initially, we note that our district decided some time ago that similar actions by the APA violate the plea agreement between a defendant and the State. See Randolph v. Ohio Adult Auth. (Jan. 21, 2000), Miami App. No. 99 CA 17, unreported, discretionary appeal not allowed, 88 Ohio St.3d 1512. In Randolph, we held that when the APA begins its decision-making process, it should place inmates in the appropriate offense seriousness category and guideline range, based on the crime of conviction, not the crime for which the inmate may have been indicted. 2000 WL 43712, at p. 4. We have followed this approach in several other cases as well. See, e.g., Givens v. Ohio Adult Parole Auth. (Sept. 22, 2000), Clark App. No. 2000 CA 35, unreported. We have also stressed that this holding does not prevent the APA from considering the facts of an inmate's crime in deciding if parole should actually be granted. Randolph, at p. 4, and State v. Callahan (Oct. 6, 2000), Montgomery App. No. 18237, unreported, 2000 WL 1475581, at p. 2.
The APA contends that Randolph was modified by Callahan, but that is simply not true. Instead, both cases adhere to the position that the APA must apply the correct offense category when it begins the parole decision-making process. Randolph, 2000 WL 43712, at p. 4; Callahan, 20000 WL 1475581, at p. 2. The APA has also submitted authority from other districts disagreeing with our approach. See, e.g., Layne v. Ohio Adult Parole Auth. (May 29, 2001), Marion App. No. 9-2001-06, unreported.
In Layne, the Third District rejected an inmate's claim that the APA had breached the plea agreement, "resulting in additional prison time, not part of that plea agreement." 2001 WL 574326, at p. 2. The basis for this conclusion was that the APA was not bound by the plea agreement in deciding the inmate's eligibility for parole. Id., relying on State v. Shaner (July 27, 2000), Logan App. Nos. 8-99-16 and 8-99-17, unreported. Shaner itself involved an inmate's attempt to withdraw his guilty plea, based on breach of the plea agreement. As in Layne, the inmate was subject to the revised guidelines, and his minimum sentence for parole eligibility increased. However, the Third District found no manifest injustice, because nothing in the record indicated that the inmate had an agreement with the State at the time of sentencing as to the minimum sentence to be served. Shaner, 2000 WL 1049314, at p. 4.
We do not disagree with the Third District about the fact that plea agreements do not promise defendants that they will serve only the minimum sentence. Admittedly, the Ohio Supreme Court has said that "R.C.2967.03 (which gives the APA authority to investigate and determine fitness for parole) creates no expectancy of parole or a constitutional liberty interest sufficient to establish a right of procedural due process." State ex rel. Seikbert v. Wilkinson (1994), 69 Ohio St.3d 489,490. Nonetheless, where a defendant enters into a plea agreement with the State, and particularly, where, as here, minimum and maximum sentences are imposed as part of the agreement, a contracting party reasonably assumes that he will be given meaningful consideration for parole before his maximum sentence expires. However, meaningful consideration is absent when a defendant is placed in a category for which parole is not even available until after the expiration of his maximum term.
Furthermore, at the time Lee was sentenced, R.C. 2967.13 provided that:
 [a] prisoner serving a sentence of imprisonment for a felony for which an indefinite term of imprisonment is imposed becomes eligible for parole at the expiration of his minimum term, diminished as provided in sections 2967.19, 2967.193, and 5145.11 of the Revised Code.
This statute does not provide that inmates have a right to be paroled at the end of their minimum term, or at any time before the maximum term ends. On the other hand, we think the words "eligible for parole" ought to mean something. An inmate is never "eligible" for parole if he appears before the parole board, only to be told that his eligibility date under the guidelines will exceed his maximum sentence. In contrast to this approach, the legislature's choice of words implies that inmates will actually become "eligible" for parole at some point. Therefore, when Lee entered into the plea agreement, he would have had a reasonable expectation of meaningful parole consideration.
Again, the point of Randolph and our other decisions was not that inmates have a right to be released at the end of their minimum sentences. Instead, our point was that the State should uphold its own agreements. The State should also be bound by the statutory language chosen by the legislature. As the trial court noted, the State should not be able to do indirectly what it could not do directly — or rather, elected not to do directly.
In this regard, the APA relies heavily on the argument that county prosecutors have no authority to enter into contracts on behalf of the APA. We consider this argument disingenuous. R.C. 309.08(A) provides that:
 "[t]he prosecuting attorney may inquire into the commission of crimes within the county. The prosecuting attorney shall prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party.
Given these duties, no one could seriously dispute that the prosecutor acts as an agent of the State of Ohio.
Likewise, the Department of Rehabilitation and Correction is a statutorily created administrative department of the State of Ohio, and the APA is in a division of that department. See R.C. 121.02(P) and R.C.5149.02. It is true that the attorney general is the APA's official legal representative. See R.C. 5149.08. However, that fact is irrelevant, since the real issue is whether a state agency may disregard agreements entered into on behalf of the State, and may disregard statutory language. If that is to be the case, then criminal defendants should be told when they enter pleas that their plea agreement is of no effect, since they will be treated as if they had committed each and every crime for which they were indicted. Defendants should also be told that they may never be meaningfully considered for parole, even though the legislature has said they will be eligible for parole at the end of their minimum terms. As we observed in our prior decision in this case, "[i]f the action of the Authority is sanctioned, then plea bargaining will be a thing of the past in Ohio, at least as to defendants facing incarceration." Lee, 2000 WL 353159, p. 1, n. 1. Furthermore, while we did not rely on this point in Randolph, the APA's action could violate the Contract Clause. See Shimko v. Lobe (1997), 124 Ohio App.3d 336, 346 (noting that regulations which substantially impair contracts may violate the Contract Clause).
Based on the preceding discussion, we reject the APA's suggestion to follow Layne. We will continue to follow Randoph and its progeny.
As an additional point, we agree with the trial court that the APA's use of the parole guidelines violated due process. According to the Ohio Supreme Court, "[r]ules issued by administrative agencies pursuant to statutory authority have the force and effect of law." Parfitt v. Columbus Correctional Facility (1980), 62 Ohio St.2d 434, 436. As a result, "administrative agency rules, just as statutes, must have a reasonable relation to a proper legislative purpose and be neither arbitrary nor discriminatory in their effect." Ohio Academy of Nursing Homes, Inc. v. Barry (1990), 56 Ohio St.3d 120, 127.
The guidelines manual published by the Ohio Department of Rehabilitation and Correction indicates that "the purpose of the revised guidelines is to assist the Parole Board in making consistent, fair, and equitable decisions in determining the amount of time an offender must serve before being released to the community." In explaining the Parole Guidelines Chart, the manual further says that the Chart "sets forth the applicable guideline range (in total months to be served before release, including jail time) based on the seriousness of the offender's current offense and the offender's criminal history/risk score." As we mentioned earlier, the Chart then lists thirteen categories of offenses, of which aggravated murder is the worst.
We believe the guidelines are arbitrary and irrational when interpreted to mean that an offender's "current offense" is a crime other than the crime of conviction. Instead, the crime of conviction must be the starting point on the grid. As we have stressed, this does not mean that the APA is prevented from considering the facts and circumstances of the crime when deciding if an inmate is a suitable parole risk.
Accordingly, based on the preceding discussion, all assignments of error are overruled and the judgment of the trial court is affirmed.
FAIN, J., and YOUNG, J., concur.