DANN et al., Appellants,

v.

OHIO ELECTIONS COMMISSION, Appellee.

Court of Common Pleas of Ohio,
Franklin County.

No. 09 CV 11046.

Decided June 17, 2011.

40

Donald J. McTigue, for appellants.

Mike DeWine, Attorney General, and Damian Sikora, Assistant Attorney General, for appellee.

---

HORTON, Judge.

{¶ 1} This action comes before the court upon an appeal of a decision of the Ohio Elections Commission issued by mail on July 9, 2009. The appeal was timely filed on July 23, 2009, by the appellants; i.e., Marc Dann, Dann for Ohio, and Mary Beth Snyder. The appeal was filed with this court pursuant to R.C. 119.12. The record of the administrative proceeding has been provided, and legal arguments have been filed. As set forth below, the decision of the commission is affirmed. Therefore, this court dismisses the appeal of the appellants.

## STATEMENT OF THE CASE

{¶ 2} Appellants appeal from a decision of the appellee. Marc Dann appeals from the following:

The commission found a violation of R.C. 3517.13(O) against Marc Dann for the following activities and imposed the listed penalties:

2. The improper installation of a home security system from campaign funds for which the commission determined to impose a fine of $1,000.[1]

{¶ 3} Dann for Ohio appeals from the following:

The commission found a violation of R.C. 3517.13(O) against the campaign committee, Dann for Ohio, for the following activities and imposed the listed penalties:

2. The improper installation of a home security system from campaign funds for which the commission determined to impose a fine of $1,000.[2]

{¶ 4} Mary Beth Snyder appeals from the following:

The commission found a violation of R.C. 3517.13(O) against Mary Beth Snyder for the improper use of campaign funds to pay for the installation of a home security system and imposed a fine of $250.

{¶ 5} Appellee has asserted that the findings are factual and lawful.

---

1. Marc Dann did not appeal the portion of the decision that led to a public reprimand letter for the use of campaign funds to pay for cellphone services.

2. Dann for Ohio did not appeal the portion of the decision that led to a public reprimand letter for the use of campaign funds to pay for cellphone services.

## STATEMENT OF THE FACTS

{¶ 6} During an audit of campaign spending for the year 2007, the secretary of state discovered expenditures for a security system that was installed at the home of Dann. The expenses were questioned, and a request for additional support was made to appellants. On June 20, 2008, Dann responded to the inquiries.

{¶ 7} The secretary of state was unsatisfied with the response and asked for clarification or a correction regarding the campaign expenses. Dann responded to that inquiry by a letter dated October 3, 2008, and a second letter dated November 14, 2008. In those letters, Dann indicated that the expenditures met the exceptions in R.C. 3517.13(O)(2). Dann asserted that the expenditures were permissible, legitimate, necessary, ordinary, and verifiable expenses that were incurred in connection with his duties as attorney general.

{¶ 8} Having not been satisfied with the responses, the secretary of state filed a complaint with the appellee. The secretary of state named Dann, Dann for Ohio, and Mary Beth Snyder.[3] Snyder was a deputy treasurer of the Dann for Ohio committee and signed all of the checks associated with the payments for the security system. Snyder also signed one of the contracts associated with some of the work to be performed regarding the security system.

{¶ 9} The appellee held a preliminary hearing on March 19, 2009. That hearing was converted into the final hearing with the consent of the parties. The parties entered into stipulations concerning all material facts relevant to the security system. Therefore, there was no dispute that Dann for Ohio had directly paid for the system and its components, that the system and components had been installed in Dann's personal residence, and that the system and components still remained there at the time of the hearing.

{¶ 10} Having stipulated to the evidence, the parties engaged in oral argument. At no time during the hearing did the appellants ever raise any constitutional issue in regard to the application of R.C. 3517.13. There was also no challenge to the appellee's jurisdiction. Appellants also admitted during the hearing that there was no precedent in Ohio to justify the expenditure directly made by Dann for Ohio in regard to the installation of the security system.

{¶ 11} During the hearing, Commissioner McGee Brown stated the following:

I believe that the security system was just beyond improper, and I have some feeling for Mr. Dann and the need to protect his family; however, I don't

---

3. The secretary of state also named Bruce Lev, the former treasurer of the committee, but he was dismissed by the appellee at the hearing.

know that anybody contributing to a campaign thinks that they're paying for the installation of a permanent fixture to the candidate's house.

The evidence in the stipulated record confirmed that windows and other fixtures had been installed as part of the $35,000–to–$40,000 security system.

{¶ 12} The appellee held that the act of purchasing and installing the security system at Dann's residence was a violation of campaign finance law. The appellee fined Dann and Dann for Ohio $1,000 each. The appellee fined Snyder $250 for signing the checks. The decision of the appellee was mailed on July 9, 2009.

{¶ 13} Appellants filed their notice of appeal on July 23, 2009. The briefing schedule was modified a number of times thereafter. Appellants filed their brief on November 30, 2009. Appellee filed its brief on December 28, 2009, and the appellants filed their reply on January 19, 2010. This matter is now ready for review.

## STANDARD OF REVIEW

**Administrative Appeal:**

{¶ 14} Appellants assert that the decision by the appellee is not supported by reliable, probative, and substantial evidence. Review by this court of an administrative agency, such as the appellee, is governed by R.C. 119.12 and the multitude of cases addressing that section. The most often cited case is that of *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. The *Conrad* decision states that in an administrative appeal filed pursuant to R.C. 119.12, the trial court must review the agency's order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law. The court stated at 111–112:

> In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body, which, as the fact-finder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive.

> Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given

no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order.

{¶ 15} The *Conrad* case has been cited with approval numerous times. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, noted *Conrad* and stated that although a review of applicable law is de novo, the reviewing court should defer to the agency's factual findings. See *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 82, 697 N.E.2d 655.

{¶ 16} When the issue concerns the legal interpretation of a code sections, this court is mindful of the following case law:

We recognize that generally a reviewing court will not intrude into areas of administrative discretion for the reason that a rebuttable presumption of validity attaches to actions of administrative agencies. *Ohio Academy of Nursing Homes, Inc. v. Barry* [1990], 56 Ohio St.3d [120] at 129, 564 N.E.2d 686; and *Ohio Academy of Nursing Homes, Inc. v. Creasy* [ (Aug. 16, 1983), 10th Dist. No. 83AP–47], 1983 WL 3652, quoting *Country Club Home, Inc. v. Harder* (1980), 228 Kan. 756, 763 and 771, 620 P.2d 1140. State agencies and their personnel, acting pursuant to a grant or delegation of authority from the legislature, enjoy reasonable latitude with respect to decisions made within their administrative domain. *Ohio State Pharmaceutical Assn. v. Creasy* (S.D.Ohio 1984), 587 F.Supp. 698, 704. An agency's interpretation of a statute that governs its actions should be given deference so long as the interpretation is not irrational, unreasonable, or inconsistent with the statutory purpose. *Ellis Ctr. for Long Term Care v. DeBuono* (1998), 175 Misc.2d 443, 448, 669 N.Y.S.2d 782. Similar deference should be given an agency's interpretation of the rules and regulations it is required to administer, unless that interpretation is unreasonable or conflicts with a statute covering the same subject. *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538.

The agency's interpretation and application of its rules cannot be arbitrary, capricious or otherwise contrary to law, nor can the interpretation and application constitute an abuse of discretion. See *Ohio Academy of Nursing Homes, Inc. v. Barry,* supra, 56 Ohio St.3d at 129, 564 N.E.2d 686. The agency must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Manufacturers Assn. of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.* (1983), 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443, quoting *Burlington Truck Lines, Inc. v. United States* (1962), 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207. A judicial review of that explanation must inquire whether the

decision is based upon relevant factors and whether there has been a clear error in judgment on the agency's part. Id. Among the indicia that agency action is arbitrary and capricious are (1) that the agency has relied on factors the legislature did not intend it to consider; (2) that the agency failed to consider an important aspect of the problem; (3) that the agency's explanation of its decision is contrary to the evidence before it; or (4) that the agency's action is implausible to an extent that it cannot be attributed to agency expertise. Id.

*Morning View Care Ctr.-Fulton v. Ohio Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶ 47–48.

{¶ 17} This court must give due deference to appellee's interpretation of the governing statutes.

**Constitutional Questions:**

{¶ 18} The appellants also question whether R.C. 3517.13(O) is constitutional. In order to prevail on such a claim, a party must overcome the presumption of constitutionality. *Austintown Twp. Bd. of Trustees v. Tracy* (1996), 76 Ohio St.3d 353, 667 N.E.2d 1174. Therefore, the person questioning the statute has the burden of proving beyond a reasonable doubt that the statute and constitutional provisions are incompatible. *State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141, 142, 11 OBR 436, 464 N.E.2d 153. Finally, in regard to this appeal, the appellant must demonstrate that the law being questioned is unconstitutional in all of its applications. *Hoffman Estates v. Flipside* (1982), 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362.

{¶ 19} This court will keep all these rules in mind while it reviews the arguments of counsel.

## ERRORS RAISED BY APPELLANTS

{¶ 20} The court will address the errors in the order they were advanced by appellants in their brief.

I. The record establishes that the use of campaign funds in the present case to pay for the costs of a residential security system to protect the officeholder and his family against threats made in connection with the duties of his office was permissible under R.C. 3517.13(O).

{¶ 21} Appellants break this argument down into the following points:

A. The personal-use prohibition

B. Permissible expenditures of public funds

C. Burden of proof

## A. THE PERSONAL–USE PROHIBITION

{¶ 22} Appellants argue that the use of the campaign funds to install the security system was a permissible exception to the normal prohibition in R.C. 3517.13(O). Please note the following relevant language from the statute in question:

(O) No beneficiary of a campaign fund or other person shall convert for personal use, and no person shall knowingly give to a beneficiary of a campaign fund or any other person, for the beneficiary's or any other person's personal use, anything of value from the beneficiary's campaign fund, including, without limitation, payments to a beneficiary for services the beneficiary personally performs, except as reimbursement for any of the following:

(1) Legitimate and verifiable prior campaign expenses incurred by the beneficiary;

(2) Legitimate and verifiable ordinary and necessary prior expenses incurred by the beneficiary in connection with duties as the holder of a public office, including, without limitation, expenses incurred through participation in non-partisan or bipartisan events if the participation of the holder of a public office would normally be expected.

{¶ 23} Appellants assert that the statute bans the personal use of campaign funds unless the personal use is for legitimate campaign expenses or a legitimate, ordinary, and necessary expenses in connection with the duties of the person as an officeholder. Appellants assert that there is a great deal of leeway in the language to allow a "beneficiary" to decide on the use of campaign funds.

{¶ 24} Appellants advance Advisory Opinion 87ELC–13 [4] to support their belief that the expenditure was valid. The appellants latch onto the "but for" test even though the advisory opinion stated that a but-for test was not conclusive in deciding that campaign funds may be used, because it was too subjective. It was suggested within Opinion 87ELC–13 that a review of the reasonableness and relevance of the expense provided a more objective test.

{¶ 25} Appellants also rely upon Advisory Opinion 87ELC–4 to define "ordinary" as "customary, usual or normal." "Necessary" was defined as "appropriate and helpful." Then appellants listed a number of expenditures that have been approved in the past. However, none of the items listed equate to a residential security system quite like the system purchased by the Dann for Ohio campaign for the sole benefit of Dann.

{¶ 26} Appellants focus less on the benefit to Dann and more on whether the expenditure legitimately relates to being a candidate or officeholder. Appellants

---

4. Ohio Elections Commission Advisory Opinion abbreviated as # ELC-#.

argue that the language of the code has a wide latitude and that the use of the money for the security system falls within that latitude. As noted below, this court agrees that the use of campaign funds for security can fall within R.C. 3517.13 and is a legitimate use of such funds.

{¶ 27} Appellee responds by also setting forth the definitions. Appellee adopts the following definitions:

"Legitimate": True or valid in the sense that the expenditure is related to the duties of public office; conforming to recognized principles or accepted rules and standards.

"Verifiable": Able to be proven true, confirmed or authenticated.

"Ordinary": Customary and usual; taking place according to customary occurrences or procedures.

"Necessary": appropriate and helpful to accomplishing a particular end.

Appellee addresses the standard of review that applies to an R.C. 119.12 appeal, which appellants seem to ignore. Appellee asserts that the record is supported by reliable, probative, and substantial evidence showing that a campaign expenditure, i.e., the purchase of the home security system, was for a personal expense.

{¶ 28} The parties stipulated that as much as $40,000 had left the campaign for the purpose of installing the security system at Dann's residence. Appellants claimed that the value of the system was only $35,000 due to a padded bill, yet that does not change the fact that $40,000 in campaign funds went toward the purchase of the system.

{¶ 29} Appellee asserts that it was well settled that direct payments from a campaign committee is allowed only if it is shown that the item is exclusively related to the campaign or duties of public office. If the item is partly related to such a purpose, then the campaign committee may pay only for the related portion. Appellee advances its prior holdings that showed that when the item was not exclusively related, the proper method was for the beneficiary to incur the expense and then seek reimbursement from the committee.

{¶ 30} Here, it is clear that Dann for Ohio purchased 100 percent of the system. Again, the general rule has been that if the expense is only partially related to the campaign, then the item should be purchased directly by the beneficiary, and the beneficiary should seek reimbursement for the percentage share of the item from the committee. That did not happen in this case. Dann for Ohio directly paid for the system, and there was no evidence that Dann has ever attempted to reimburse the committee for the expenditure. The evidence showed that Snyder signed the contract and signed the checks authorizing the direct payment. The permissible inference is that Dann still retained a personal benefit from the changes to his home.

{¶ 31} During the administrative proceedings, the secretary of state pointed to the language of R.C. 109.02. Please note the following language from that code section:

> The attorney general is the chief law officer for the state and all its departments and shall be provided with adequate office space in Columbus. Except as provided in division (E) of section 120.06 and in sections 3517.152 to 3517.157 of the Revised Code, no state officer or board, or head of a department or institution of the state shall employ, or be represented by, other counsel or attorneys at law. The attorney general shall appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state is directly or indirectly interested. When required by the governor or the general assembly, the attorney general shall appear for the state in any court or tribunal in a cause in which the state is a party, or in which the state is directly interested. Upon the written request of the governor, the attorney general shall prosecute any person indicted for a crime.

Appellee asserts that it was up to the appellants to establish the required "vital nexus" between the above language and the instillation of over $40,000 in security equipment, including new windows at Dann's personal residence. Appellee feels that appellants failed to make that connection and therefore that the fines are appropriate and lawful.

{¶ 32} Appellee asserts that to allow such a purchase would lead to additional legal issues because the security upgrades would or could become fixtures. Hence, value would remain even after the perceived security threat has been removed. Appellee is concerned with just how the Dann for Ohio committee was going to be reimbursed for the expenditure.

{¶ 33} Appellee also advances its belief that the expense was not even necessary. The stipulated evidence shows that Dann was receiving security from various state agencies. That security was not terminated, nor was it going to be terminated until after the threat was no longer relevant. Hence, the home security system was not necessary. The court rejects that argument.

{¶ 34} Appellee contests Dann's claim that his actions in installing the system were motivated by a desire to save the taxpayers the cost of the state-sponsored security. Appellee points out that the credibility of that statement was compromised by Dann's own affidavit, in which he stated that the security that was provided by the state was or had become inconvenient and was limiting his family's privacy. In any event, even if Dann had the laudable goal of saving taxpayers money, that did not give him the right to take that money from his campaign committee in the manner that he did.

{¶ 35} Taking all of this into consideration, in addition to the deference that this court must afford appellee, appellee asserts that it was well within its

authority to hold that the expenditures in this case were inappropriate. There existed reliable, probative, and substantial evidence to support appellee's decision. That decision was in accordance with law. Furthermore, the interpretation of the code by appellee is reasonable, rational, and consistent with the statutory purpose of the code.

## B. PERMISSIBLE EXPENDITURES OF PUBLIC FUNDS

{¶ 36} Next, appellants advance the argument that because public funds can be used to protect state employees, it therefore must also be true that campaign funds used for the same purpose are appropriate. Appellants spent a great deal of their brief informing the court of the cost of the state-provided protection. Appellants contend that appellants' use of the campaign money saved the state the expense that was being incurred in protecting Dann.

{¶ 37} Appellants assert that it was well known that public money has been expended not only in protecting state employees. In fact, public money has also gone into installing security improvements for a residence. However, the residence in question was the official governor's residence, not a private home.

{¶ 38} This court recognizes that Ohio campaign-finance laws are fashioned after federal laws prohibiting using campaign funds for personal use. Nevertheless, appellants provide persuasive federal authority that supports the use of campaign funds for a residential security system.

{¶ 39} The Federal Election Commission issued Advisory Opinion 2009–08, which was requested by a member of Congress and which found that campaign funds could be used for security upgrades to that member's personal residence due to the threats he received. However, the Congressman's security provider estimated that the cost would be between $6,000 and $7,500. Additionally, the upgrades did not include structural improvements to increase the value of the Congressman's property.

{¶ 40} Appellants spent $40,000 of Dann's campaign funds for similar purposes, which is an astronomical difference. Appellants' use of campaign funds for Dann's personal residence was excessive and inappropriate. Just because public funds are used to protect state employees, one may not draw the conclusion that it is acceptable to use exorbitant campaign funds to that end. Appellants' argument therefore lacks merit.

{¶ 41} Also, in this portion of appellants' brief, they assert that because it is now permissible for campaign funds to be used to defend a beneficiary against ethics complaints, it must therefore be true that it is appropriate to spend campaign funds to defend against security threats aimed at a beneficiary. That argument is misplaced.

{¶ 42} What is clear from a review of the briefs is that there has never been precedent in Ohio for the type of expenditure in this case. Never has a campaign directly purchased $40,000 in security equipment and upgrades for the private residence of a beneficiary. Consequently, appellant's arguments lack merit.

### C. BURDEN OF PROOF

{¶ 43} Appellants assert that the secretary of state failed to meet her burden of proof concerning the claims advanced before appellee. Appellee claims that it was appellants' burden at the hearing and not the secretary of state's.

{¶ 44} What is clear from a review of R.C. Chapter 3517 is that it was the secretary of state's burden to file a complaint and present evidence that showed that the expenditure of the money in question violated R.C. 3517.13. The secretary of state met that burden by presenting the stipulated evidence of the direct purchase of the security system by Dann for Ohio. Once that burden had been met, it was incumbent upon appellants to establish that the direct expenditure was covered by one of the exceptions to R.C. 3517.13(O) or otherwise lawful.

{¶ 45} Here, appellants asserted a number of policy arguments as well as theoretical arguments to advance their position. However, appellee was free to reject the arguments based upon its interpretation of the law. A review of the stipulated facts leads this court to determine that there existed reliable, probative and substantial evidence to support appellee's decision. The decision was in accordance with law. Furthermore, the interpretation of the code by appellee is reasonable, rational, and consistent with the statutory purpose of the code.

II. The record fails to establish that appellant committee or appellant Snyder knowingly gave to appellant Dann campaign funds except for expenses incurred in connection with the duties of his office.

{¶ 46} This argument is raised by appellants for the sole benefit of Dann for Ohio and Snyder. Appellants claim that there was no evidence that Dann for Ohio or Snyder "knowingly" gave anything of value to the beneficiary, i.e., Dann, from the campaign's fund. Appellants claimed that Snyder believed that Dann for Ohio was paying for legitimate security expenses. Therefore, the element of "knowingly" was not met, and the findings against appellants Dann for Ohio and Snyder should be overturned. The argument claims that because Dann for Ohio and Snyder thought it was okay and did not know it was wrong, it was not possible for them to have knowingly violated the statute.

{¶ 47} Appellee claims that the use of the word "knowingly" in the statute modified "giving anything of value from the beneficiary's campaign fund." Appellee does not believe that the language established that appellee must prove that Dann for Ohio and Snyder knew that they were in violation of the statute when

Snyder signed the contract or signed the checks. Appellants' reply is silent in regard to appellee's argument on this point.

{¶ 48} Appellee asserts that Dann for Ohio and Snyder knew or should have known that the purchases were strictly for Dann's personal use. Appellee asserts that every campaign treasurer (including a deputy treasurer) has a legal duty to scrutinize every expenditure to make sure it is legal in anticipation of filing the required expense report mandated by R.C. 3517.10.

{¶ 49} Appellee further points out that Snyder's signature was on the service contract and on every check for the installation of the system. Appellee concludes that Snyder had a legal obligation to understand the laws regarding the use of campaign finances and that she violated those rules when she authorized the expenditure.

{¶ 50} The interpretation of the code as proposed by appellants is inappropriate. Appellants' argument is simple: because Dann for Ohio and Snyder did not think they were doing anything wrong, they could not have knowingly violated the statute. That assertion is rejected by this court. The record contains reliable, probative, and substantive evidence to support the finding of appellee that Dann for Ohio and Snyder knowingly provided campaign funds for the personal benefit of Dann. That finding is in accordance with law. Furthermore, the interpretation of the code as advanced by appellee is reasonable, rational, and consistent with the statutory purpose of the code.

III. The record fails to establish that appellant Dann converted campaign funds for personal use

{¶ 51} This assertion is also rejected for the same reasons adopted in regard to appellants' last argument. Dann received the funds and was present when the idea of using the funds was formulated. He knew that the security system was installed at his home and that it was paid for by his campaign committee. Therefore, there was similar reliable, probative, and substantive evidence to support the finding of appellee that Dann knowingly received the campaign expenditures for his personal use. That finding was in accordance with the law.

IV. The provisions of R.C. 3517.12(O) are unconstitutionally vague as applied in the instant case

{¶ 52} The final two issues raised by appellants address the constitutionality of the statute. Here, appellee responds by stating that appellants failed to raise constitutional issues during the administrative process and therefore waived those issues. Appellants fail to address the constitutional issues in their reply.

{¶ 53} In support of this argument, appellee relies on *Derakhshan v. State Med. Bd.*, 10th Dist. No. 07AP–261, 2007-Ohio-5802, 2007 WL 3148684. Appellee asserts that appellants' "as applied" challenge to this court frustrates the statutory system. Please note the following from *Derakhshan* :

Ohio courts have distinguished facial constitutional challenges from as-applied challenges. In *Bd. of Edn. of the South–Western City Schools v. Kinney* (1986), 24 Ohio St.3d 184 [24 OBR 414, 494 N.E.2d 1109], syllabus, in the context of an appeal from the Board of Tax Appeals, the Supreme Court of Ohio held:

"A party that challenges the constitutionality of the application of a tax statute in a particular situation is required to raise that challenge at the first available opportunity during the proceedings before the Tax Commissioner, and a failure to do so constitutes a waiver of that issue."

Id. at ¶ 28. The *Derakhshan* court went on to establish that an "as applied" constitutional challenge must be raised during the administrative level or it is waived. Hence, this court holds that appellants' as-applied argument was waived.

V. Appellee's decision constitutes a violation of equal protection of the laws in the instant case

{¶ 54} The last assignment of error deals with appellants' belief that R.C. 3517.13(O) violated the concept of equal protection. Appellants assert that the issue of primary concern to the appellee was not the use of campaign money for a security system, but how much should be expended and for what type of system.

{¶ 55} This court is mindful of the following:

All statutes enjoy a presumption of constitutionality. Before a court de-clares a statute unconstitutional, the court must be convinced " 'beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25, quoting *State ex rel Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

*Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, 890 N.E.2d 307, ¶ 28. Concerning an equal protection argument, the following is controlling:

"Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 6. See *Park Corp. v. Brook Park*, 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 19, quoting *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (" 'The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are

in all relevant respects alike' "). "The limitations placed upon governmental action by the federal and state Equal Protection Clauses are essentially the same." *McCrone* at ¶ 7.

Id. at ¶ 30. Appellants fail to advance any classifications in R.C. 3517.13(O) that would trigger an equal protection analysis. Appellants argue that appellee's decision created a "distinction between commonly accepted, legitimate forms of security," and therefore there was "a denial of equal protection and benefit of the laws to Appellants."

{¶ 56} Appellee asserts that appellant is trying to create an apple-to-orange comparison between the use of public funds for security and campaign funds for security. Appellee agrees with appellants that appellee's decision does not stand for the proposition that all security expenditures are unlawful or unwarranted. Appellee asserts, however, that the decision held that the expenditure in this case for this system under these facts were prohibited by R.C. 3517.13(O). But to compare the expenditure with what can be done with public funds is not legitimate. Again, it must be noted that appellants fail to address any of appellee's constitutional arguments in their reply.

{¶ 57} As advanced by appellants, the argument has no bases in traditional equal protection cases. Please note the following language:

> Under traditional equal protection analysis, " '[a] statutory classification which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clause of the Ohio or United States Constitutions [sic] if it bears a rational relationship to a legitimate governmental interest.' " [*McCrone*] at ¶ 8, quoting *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181. However, the preliminary step in conducting an equal protection analysis regarding a particular statute is to examine the classifications created by the statute in question. *McCrone* at ¶ 11; *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 290, 595 N.E.2d 862. Furthermore, "where there is no classification, there is no discrimination which would offend the Equal Protection Clauses." Id.

*Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, 890 N.E.2d 307, at ¶ 31. There are no classifications in R.C. 3517.13(O) subject to an equal protection argument. There has been no showing that other similarly situated campaigns or individuals have been treated differently from appellants. Appellants' argument lacks merit.

## DECISION

{¶ 58} It is the opinion of this court that security concerns are intertwined with a campaign for a political office. A candidate or officeholder projects him or herself into the public arena to conduct his or her job duties. Sometimes the

individual, by a statement, action, or misperception of the public, can become the subject of personal attacks and threats. The purchase of protection for the candidate or officeholder, therefore, is a legitimate use of campaign funds. However, that legitimate goal was improperly handled by appellants.

{¶ 59} Having overruled all assignments of error asserted by appellants, having found that the decision of appellee was supported by reliable, probative, and substantive evidence and in accordance with the law, and giving appellee's interpretation of the statute deference as required, this court affirms the decision of the Ohio Elections Commission.

{¶ 60} Appellants' appeal is dismissed.

So ordered.